995 A.2d 1094

ROSE NINI, PLAINTIFF–RESPONDENT, v. MERCER COUNTY COMMUNITY COLLEGE, ROBERT ROSE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, VANESSA WILSON, IN HER INDIVIDUAL AND OFFICIAL CAPACITIES, BOARD OF TRUSTEES OF MERCER COUNTY COMMUNITY COLLEGE, AND ITS PERSONNEL COMMITTEE TRUSTEES, IN THEIR OFFICIAL CAPACITIES ONLY, DEFENDANTS–APPELLANTS.

Argued November 10, 2009—Decided June 1, 2010.

Rivera–Soto, J., dissented and filed opinion.

*Walter F. Kawalec, III,* argued the cause for appellants (*Marshall, Dennehey, Warner, Coleman & Goggin* attorneys, for Mercer County Community College, Vanessa Wilson, and Trustees of Mercer County Community College and *Cozen O'Conner,* attorneys for Dr. Robert Rose; *Mr. Kawalec, Marianne G. May,* and *Richard L. Goldstein,* on the joint brief).

*Steven Blader,* argued the cause for respondent (*Szaferman, Lakind, Blumstein & Blader,* attorneys).

*Anne Marie Kelly,* Senior Deputy Attorney General, submitted a brief on behalf of *amicus curiae* New Jersey Division on Civil Rights (*Anne Milgram,* Attorney General of New Jersey, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel).

Justice LONG delivered the opinion of the Court.

In 2004, after working for Mercer County Community College for twenty-six years as a contract employee, Rose Nini was advised that her contract that was set to expire in 2005 would not be renewed. At the time Nini was over seventy years of age. She then filed a complaint against several College-related defendants (collectively the College) alleging, among other claims, age discrimination.

The trial judge granted the College's motion for summary judgment, on the basis that the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–12(a), permits employers to "refus[e] to accept for employment" employees over the age of seventy. The Appellate Division reversed, declaring that the nonrenewal of Nini's contract was the equivalent of a termination, an act that is squarely within the prohibitions of the LAD.

On this appeal we are asked to interpret the New Jersey LAD and determine whether the over-seventy exception applies to the nonrenewal of an existing employee's contract. Like the Appellate Division, we conclude that the refusal to renew the contract of an employee over seventy, on the basis of age, is a prohibited discriminatory act under the LAD.

## I.

This matter comes before us on the College's motion for summary judgment; as such, "we view the facts in the light most favorable to plaintiff." *Sciarrotta v. Global Spectrum,* 194 *N.J.* 345, 348, 944 *A.2d* 630 (2008) (citing *Daidone v. Buterick Bulkheading,* 191 *N.J.* 557, 560 n. 1, 924 *A.2d* 1193 (2007)); *Soto v. Scaringelli,* 189 *N.J.* 558, 564, 917 *A.2d* 734 (2007) (citing *DiProspero v. Penn,* 183 *N.J.* 477, 482, 874 *A.2d* 1039 (2005)).

Nini began her employment at the College in 1979 as an executive assistant to the president. At the time, she was in her late forties and had previously been a member of the Board of Trustees of the College (Board). During her employment, Nini served in a number of capacities. Her last position was Dean of Corporate and Community Programs. In that role, Nini's areas of responsibility included business and community programs, training and development, and the corporate conference center.

Nini was employed through a series of contracts governed by an agreement between the Board and the College Professional Staff

Federation.[1]  Terms of appointment for contract employees correspond with the number of years the employee has worked for the College.  Employees who hold positions for ten or more years are granted three-year contracts.  Further, contract employees, who, like Nini, work for the College for at least six years, are entitled to a full year's notice of non-reappointment.

From 1979 to 2001, the College renewed Nini's employment contracts without incident.  However, in 2001 she was advised by letter from the acting president that the Board was considering not renewing her contract that was set to expire in 2002.  Nini's contract was ultimately renewed through June 30, 2005.

On June 23, 2004, the president of the College, Dr. Robert Rose, informed Nini by letter that she was "not recommended for reappointment as Dean" and that her "current contract [would] expire June 30, 2005."  According to the letter, Dr. Rose was to meet with Nini by August 1, 2004, "to develop a performance plan including defining goals and objectives for the Conference Center and other departments within [Corporate and Community Programs] for the next six months."

Approximately one week later, Dr. Rose met with Nini and she presented her goals and objectives.  At that meeting, Dr. Rose told Nini that he would prepare a performance improvement plan with her.  Nini claims that during a subsequent meeting in August 2004, Dr. Rose complimented her on her success with the Conference Center, but then "made it very clear to [her] that he thought [she] had no right to be working at [her] age."  He told her that employees of similar age were considering retirement and suggested she take early retirement as well.  Nini also claims that at that meeting Dr. Rose told her that people who have been in a job for twenty-five years "lose their effectiveness."  Nini responded that she needed to work and intended to continue working, to which Dr. Rose asked what her husband would say to that.  Also

---

[1] Nini was an exempt administrator; however, she received the same rights and protections afforded to members of the Professional Staff Federation.

at that meeting, Dr. Rose told Nini that it was her last chance to get an early retirement and leave with dignity.

According to Nini, before she received notification of nonrenewal, at meetings Dr. Rose held with department heads, people discussed age and incompetence and being "dead wood," and made jokes about getting rid of the oldest employees. She stated that she heard from another employee that College Human Relations Director Vanessa Wilson said the College had to "get rid of old-timers and bring in new blood."

In September 2004, Nini sent a letter to the Board Chairman requesting the Board's review of the events surrounding her nonrenewal. In it, she stated that she believed the reason for her nonrenewal was her age, pointing to her strong twenty-five-year record and Dr. Rose's comments at the August 2004 meeting. Nini also noted that she took on more responsibilities despite her age and was successful in reaching her goals. Nini did not receive a response to her September letter, and sent a second letter in October 2004 alleging that Dr. Rose took retaliatory measures against her because of her first letter.

In January 2005, the Board began an investigation into Nini's allegations. An attorney interviewed Nini and Dr. Rose, among others, and issued her findings in a report dated March 28, 2005. She noted that Nini "presented facts that lead to a prima facie case of age discrimination, although those facts have been refuted with legitimate business purposes for the non-renewal."[2] The attorney also pointed out "that additional interviews will be necessary to determine the validity of some of the information obtained." Apparently, no further investigation occurred.

In March 2005, Dr. Rose sent Nini a letter confirming that her contract would not be renewed and would expire on June 30, 2005.

---

[2] Dr. Rose offered three main reasons for the College's decision not to renew Nini's contract: (1) that her tendency to micromanage caused discontent among her staff; (2) that her financial reporting was inconsistent and unclear; and (3) that Nini was untrustworthy.

Dr. Rose, his assistant, and Nini had a final meeting at the end of March 2005. Dr. Rose offered Nini a six-month extension, which she declined.

On September 7, 2005, Nini filed a complaint alleging age discrimination and retaliation by the College.[3] The College filed a motion for summary judgment arguing, among other things, that Nini had no claim under New Jersey's LAD because *N.J.S.A.* 10:5–12(a) permits an employer to decline to renew an employment contract of an employee seventy years of age. In granting the motion, the judge found that because the contract's expiration date was clear, and the College followed policy by affording Nini one year's notice, she was not terminated; rather, she was not rehired. According to the judge, because Nini was over seventy, she was not protected by the LAD.

The Appellate Division reversed the grant of summary judgment on the ground that "the over-seventy exception of *N.J.S.A.* 10:5–12a should not be interpreted to equate contract nonrenewals with a new hire." *Nini v. Mercer County Cmty. Coll.*, 406 *N.J.Super.* 547, 558, 968 *A.2d* 739 (App.Div.2009). Rather, the panel declared that a contract nonrenewal should be considered a termination and, therefore, outside the protection of the over-seventy exception. *Ibid.* Thus, the court remanded the case for trial because material factual issues remained to be resolved. *Ibid.*

We granted the College's petition for certification, 200 *N.J.* 206, 976 *A.2d* 383 (2009), and now affirm.[4]

---

[3] Nini also sued a co-employee, Vanessa Wilson, who was later voluntarily dismissed from the case.

[4] After oral argument we were advised by the parties that the matter had been settled and that a stipulation of dismissal was forthcoming. "We have often declined, however, to dismiss a matter on grounds of mootness, if the issue in the appeal is an important matter of public interest." *Reilly v. AAA Mid–Atlantic Ins. Co. of N.J.*, 194 *N.J.* 474, 484, 946 *A.2d* 564 (2008) (citing *Transamerica Ins. Co. v. Nat'l Roofing Inc.*, 108 *N.J.* 59, 64, 527 *A.2d* 864 (1987); *In re Application*

## II.

The LAD was enacted to ensure that:

> *All persons shall have the opportunity to obtain employment,* and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property *without discrimination because of* race, creed, color, national origin, ancestry, *age,* marital status, affectional or sexual orientation, familial status, disability, nationality, sex, gender identity or expression or source of lawful income used for rental or mortgage payments, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.
> [*N.J.S.A.* 10:5-4 (emphasis added).]

In furtherance of that goal, the Act declares it to be

> an unlawful employment practice, or as the case may be, unlawful discrimination: a. *For an employer, because of the* race, creed, color, national origin, ancestry, *age,* marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait *of any individual,* or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, *to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment;*
> . . . .
> [*N.J.S.A.* 10:5-12(a) (emphasis added).]

That is a broad mandate that unequivocally expresses a legislative intent to prohibit discrimination in all aspects of the employment relationship, including hiring and firing, compensation, the

---

*of Boardwalk Regency Corp. for a Casino License,* 90 *N.J.* 361, 367–68, 447 A.2d 1335 (technically moot issue may be judicially reviewed when matter is of public interest), *appeal dismissed, Perlman v. Att'y Gen. of N.J.,* 459 *U.S.* 1081, 103 *S.Ct.* 562, 74 *L.Ed.*2d 927 (1982); *John F. Kennedy Mem'l Hosp. v. Heston,* 58 *N.J.* 576, 579, 279 A.2d 670 (1971), *overruled on other grounds by In re Conroy,* 98 *N.J.* 321, 351, 486 A.2d 1209 (1985)). The questions presented in this case center on the interpretation of our Law Against Discrimination, *N.J.S.A.* 10:5-12(a). They have a significant effect on senior citizens in the workplace, and they continue to divide our courts. We therefore conclude that those questions "qualify as important matters of public interest" and thus we will address the merits of this appeal. *Id.* at 484–85, 946 A.2d 564. Obviously, we disagree with our dissenting colleague over what constitutes an important matter warranting our intervention.

terms and conditions of employment, and retirement. Indeed, it is clear that under the LAD, an employer may not base any employment decisions on discriminatory reasons.

However, the statute also contains a series of explicit exceptions providing that:

> it shall not be an unlawful employment practice to refuse to accept for employment an applicant who has received a notice of induction or orders to report for active duty in the armed forces; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment any person on the basis of sex in those certain circumstances where sex is a bona fide occupational qualification, reasonably necessary to the normal operation of the particular business or enterprise; *provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age;* . . . .
>
> [*N.J.S.A.* 10:5–12(a) (emphasis added).]

Those exceptions appear to constitute a nod by the Legislature to the managerial interests of employers who, it has determined, should not have to experience the financial obligations and organizational upheavals of hiring and (in the case of age) promoting workers who are unable to satisfy a bona fide occupational qualification of the job or, for one reason or another, are unlikely to be long-term prospects.

All parties agree that hiring and promotion are insulated by the exception and that termination is not. Thus, if Nini had been an initial applicant or had sought a promotion, there is a consensus that she would have no LAD claim based on age because of the over-seventy exception. The parties also agree that, had Nini been fired mid-contract for age, the employer's decision would have been actionable because a termination is not protected by the exception.

The parties' positions diverge over the status of a contract nonrenewal in that scheme. The College argues that when Nini's contract expired she became an applicant whom the College legally refused "to accept for employment," a position with which the trial judge was in accord. Nini counters, and the Appellate Division agreed, that that language refers to new hires only and

that the nonrenewal of her contract after twenty-six years was effectively a termination, which falls outside the exception.

## III.

We begin with the canons of statutory interpretation that will guide our analysis. As always, our main objective "is to determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 553, 964 *A.2d* 741 (2009) (citing *D'Annunzio v. Prudential Ins. Co. of Am.*, 192 *N.J.* 110, 119, 927 *A.2d* 113 (2007); *Daidone, supra,* 191 *N.J.* at 565, 924 *A.2d* 1193). To discern that intent, courts first look to the plain language of the statute in question. *Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 202, 723 *A.2d* 944 (1999) (citing *Nat'l Waste Recycling, Inc. v. Middlesex County Improvement Auth.*, 150 *N.J.* 209, 223, 695 *A.2d* 1381 (1997); *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.2d* 1256 (1992)). In doing so, we accord the legislatively chosen words "their generally accepted meaning, according to the approved usage of the language" unless another meaning "is expressly indicated." *N.J.S.A.* 1:1–1. If the language is clear and unambiguous, a court should not seek further guidance. *Pizzullo v. N.J. Mfrs. Ins. Co.*, 196 *N.J.* 251, 264, 952 *A.2d* 1077 (2008) (citing *Roberts v. State, Div. of State Police,* 191 *N.J.* 516, 521, 924 *A.2d* 550 (2007)).

"A statute's meaning is not self-evident, however, where varying interpretations of the statute are plausible." *Bergen, supra,* 157 *N.J.* at 202, 723 *A.2d* 944 (citing *Nat'l Waste Recycling, supra,* 150 *N.J.* at 223, 695 *A.2d* 1381). When "the Legislature's intent cannot be derived from the words that it has chosen[,]" a court may use extrinsic tools such as legislative history, legal commentary, sponsors' statements, or a Governor's press release. *Bosland, supra,* 197 *N.J.* at 553, 964 *A.2d* 741 (quoting *Pizzullo, supra,* 196 *N.J.* at 264, 952 *A.2d* 1077).

Because this case involves the LAD, special rules of interpretation also apply. The LAD is remedial social legislation

whose overarching goal is to eradicate the "cancer of discrimination." *Fuchilla v. Layman,* 109 *N.J.* 319, 334, 537 *A.*2d 652 (1988), *cert. denied, Univ. of Med. & Dentistry v. Fuchilla,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988) (quoting *Jackson v. Concord Co.,* 54 *N.J.* 113, 124, 253 *A.*2d 793 (1969)). As such, it should be liberally construed. *Bergen, supra,* 157 *N.J.* at 216, 723 *A.*2d 944 (citing *Andersen v. Exxon Co.,* 89 *N.J.* 483, 495, 446 *A.*2d 486 (1982)). Indeed, "this Court has been scrupulous in its insistence that the Law Against Discrimination be applied to the full extent of its facial coverage." *Id.* at 216, 723 *A.*2d 944 (quoting *Peper v. Princeton Univ. Bd. of Trs.,* 77 *N.J.* 55, 68, 389 *A.*2d 465 (1978)).

At the same time, we are faced with a specific exception in the LAD. "[E]xceptions in a legislative enactment are to be strictly but reasonably construed, consistent with the manifest reason and purpose of the law." *Serv. Armament Co. v. Hyland,* 70 *N.J.* 550, 558–59, 362 *A.*2d 13 (1976) (citing *Wright v. Vogt,* 7 *N.J.* 1, 6, 80 *A.*2d 108 (1951); *Palkoski v. Garcia,* 19 *N.J.* 175, 181, 115 *A.*2d 539 (1955)). "[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions." *Prado v. State,* 186 *N.J.* 413, 426–27, 895 *A.*2d 1154 (2006) (quoting 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.11 (5th ed. 1992)). It is within that framework that our inquiry will take place.

## IV.

The "differing interpretations" of the language of the over-seventy exception by the parties and by our courts in this matter suggest that it may not be "self-evident," at least as far as contract nonrenewals are concerned. *See Nat'l Waste Recycling, supra,* 150 *N.J.* at 223, 695 *A.*2d 1381. The language certainly does not address contract nonrenewals explicitly and fair arguments can be made on both sides of the issue of a worker's status when her contract has expired.

We thus turn to the legislative history of the New Jersey LAD for enlightenment. Often, such history is a treasure trove of relevant information regarding the Legislature's intent, although that is not always the case. Here, evidence of the legislative background surrounding the addition of age as a protected LAD class in 1962 (*L.* 1962, *c.* 37, § 7) has been described as "scant at best." *Bergen, supra,* 157 *N.J.* at 205, 723 *A.*2d 944 (noting that there was no accompanying statement of purpose and few aids to determine the Legislature's intent).[5]

In 1985, amendments to *N.J.S.A.* 10:5–12(a) introduced the over-seventy exception, and also prohibited mandatory retirement by adding "or require to retire, unless justified by lawful considerations other than age," to the list of unlawful employment practices. *L.* 1985, *c.* 73, § 3. The legislative history surrounding the 1985 amendments is solely focused on the prohibition on mandatory retirement. The statement of the bill's sponsor explains:

> This bill would extend the current provisions in the law governing age discrimination in all of the public and private employment to clearly prohibit the compulsory retirement of most workers simply on account of advanced age.

> [Statement of Sponsor, A. 1042 (N.J. 1984).]

Also, a press release by the Governor's office on March 11, 1985, notes that legislation was signed that day prohibiting mandatory retirement. According to the release, "mandatory retirement systems are based on the false premise that the calendar should dictate a person's work value." Press Release, Office of the Governor, *Governor Kean Signs Legislation to Prohibit Mandatory Retirement Based on Age* (March 11, 1985).

---

[5] In Bergen, we referenced two studies released prior to the passage of the "age" amendment: *A Positive Study Toward Aging* and *Discrimination in Employment Because of Age. Bergen, supra,* 157 *N.J.* at 205–06, 723 *A.*2d 944. In doing so, we recognized that there was no indication that they were relied on or adopted by the Legislature. *Id.* at 205, 723 *A.*2d 944. However, we accepted them as evidencing "the societal problems faced by older persons in the workplace at the time the 1962 amendment was passed." *Id.* at 207, 723 *A.*2d 944.

Another important aspect of the legislative history of the LAD is that it has constantly evolved over the past half century, regularly expanding the rights of our citizens.

> As originally enacted in 1945, *L.* 1945, *c.* 169, it had more limited coverage than it does at present. . . . It has been amended over a dozen times as part of a gradual legislative response directed toward eliminating forms of discrimination not theretofore banned by statute. For example, sex discrimination was expressly proscribed for the first time in 1970, pursuant to *L.* 1970, *c.* 80.
>
> [*Peper, supra,* 77 *N.J.* at 68, 389 *A.*2d 465. *See also L.* 2006, *c.* 100 (amending the LAD to include gender identity or expression discrimination).]

As is evident, that history is silent regarding any specific interpretation of the over-seventy exception. Nevertheless, we take from it a broad and evolving interest on the part of the Legislature to protect our citizens from all forms of discrimination in employment and, in particular, to protect our older citizens from being forced out of the workplace based solely on age.

## V.

■ With that as background, we turn again, as we must, to the language of the statute: "nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over seventy years of age . . . ." *N.J.S.A.* 10:5-12(a). The parties are in agreement that "accept for employment" is a reference to hiring. Their bone of contention is narrower than that. The College argues that Nini, in fact, was a job applicant, with no expectation of employment, at the point at which her contract expired and that it had a right to refuse to accept her for employment. Nini counters that, after twenty-six years, she was not an applicant within the contemplation of the over-seventy exception. Rather, she contends that the nonrenewal of her contract on the basis of age was in the nature of an illegal termination.

This is not an easy case. It is true that Nini served the College continuously for twenty-six years. It is also true that on the day her contract expired she no longer had an existing employment relationship with the school. Thus, she could fairly be viewed

through one of two lenses, as a new job applicant or as a long-term employee. The statute does not expressly address this situation, which is not unusual, *see Smith v. Fireworks by Girone, Inc.*, 180 *N.J.* 199, 216, 850 *A.*2d 456 (2004), because "[i]t is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them," *id.* (quoting *New Capitol Bar & Grill Corp. v. Div. of Employment Sec.*, 25 *N.J.* 155, 160, 135 *A.*2d 465 (1957)). Thus, it falls to us to determine which interpretation would give effect to "the obvious purpose of the Legislature." *Ibid.* (internal quotation marks omitted).

We have concluded that Nini has the better argument. First, we note that an interpretation that throws contract employees into the over-seventy exception at once narrows what should be the expansive coverage of remedial legislation like the LAD, and expands an exception in contravention of applicable principles of statutory construction. The LAD should "be applied to the full extent of its facial coverage," *Bergen, supra*, 157 *N.J.* at 216, 723 *A.*2d 944 (quoting *Peper, supra*, 77 *N.J.* at 68, 389 *A.*2d 465), and an exception should be narrowly construed with all doubts resolved in favor of the general provisions of the Act, *Prado, supra*, 186 *N.J.* at 426–27, 895 *A.*2d 1154 (quoting Singer, *supra, Sutherland Statutory Construction* § 47.11). In other words, because there is a question whether the Legislature intended to extend the over-seventy exception to employees like Nini, we begin from the proposition that expanding the exclusion and correspondingly narrowing the protective sweep of the Act should be avoided.

That conclusion is supported by other canons of construction as well. For example, "statutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole." *Bedford v. Riello*, 195 *N.J.* 210, 224, 948 *A.*2d 1272 (2008) (citing *In re Distribution of Liquid Assets*, 168 *N.J.* 1, 17–18, 773 *A.*2d 6 (2001); *State v. Brown*, 22 *N.J.* 405, 415–16, 126 *A.*2d 161 (1956)). Under that standard, we view the language of the over-seventy

exception in light of the prohibition against forced retirement that was simultaneously enacted, and also in light of the interdiction against age-based termination. If age is a prohibited consideration in connection with forced retirement and dismissal, and it is, because it is based upon the "false premise that the calendar should dictate a person's work value," Press Release, Office of the Governor, *Governor Kean Signs Legislation to Prohibit Mandatory Retirement Based on Age* (March 11, 1985), it seems doubtful to us that the Legislature intended that a long-term contract employee could be nonrenewed for the same interdicted reasons.

Further, to read the exception to permit the nonrenewal of a contract employee based on age would undermine the remedial purposes of the LAD, contrary to the goal of statutory interpretation which is "to effectuate the fundamental purpose for which the legislation was enacted." *State v. Crawley,* 187 *N.J.* 440, 452, 901 *A.*2d 924, *cert. denied,* 549 *U.S.* 1078, 127 *S.Ct.* 740, 166 *L.Ed.*2d 563 (2006) (quoting *Aponte–Correa v. Allstate Ins. Co.,* 162 *N.J.* 318, 323, 744 *A.*2d 175 (2000)). In particular, such an interpretation would create a loophole in the seamless coverage of the statute, permitting employers to place their aging employees under contract, thus precluding them from resorting to the salutary protections of the LAD.

At the same time, a statute must be read with an eye toward the evil or mischief it was designed to address. *See State v. Hugley,* 198 *N.J.Super.* 152, 157, 486 *A.*2d 900 (App.Div.1985). Here, the College's interpretation of the over-seventy exception would not advance the managerial interests at its heart-that an employer should not be exposed to the financial and organizational costs incident to hiring and promotion where an employee has limited long-term prospects. Those interests are simply not implicated where the employee is already on the job, requires no training, the organizational scheme is not impacted, the employee is performing satisfactorily, and the issue is one of contract renewal.

In addition, expanding the over-seventy exception to afford carte blanche to employers in the contract renewal realm would effectively create a two-tiered system in which fixed-term contract employees are afforded fewer rights than those serving at-will. Ironically, sweeping contract employees into the over-seventy exception by treating them as new job applicants would permit age discrimination against a contract employee who had served faithfully for thirty years, but would protect a new at-will employee from such conduct.

The College justifies that outcome based on the difference between at-will and contract employees, which it claims warrants viewing the nonrenewal of a contract employee as a permissible refusal to hire. To be sure, there are differences between the two categories, for example, that the contract worker is protected during the term of his agreement and the at-will worker is not. However, there are also similarities, the most important of which is that both classes consist of employees who have a pre-existing work relationship with the employer. It is that history that distinguishes the worker who is on the job from a new hire. We cannot close our eyes to that reality, which is what we would be required to do, if we were to consider workers like Nini in the class of new applicants.

Critical to our conclusion is that the statute prohibits both terminations and forced retirements based on age. Thus, we discern in it a specific intention to protect those employees over seventy who have a pre-existing relationship with the employer from being pushed out of the workforce based on age. Nini, a twenty-six year employee, clearly falls within that category as a factual matter. In the absence of a clear cue to the contrary, we can see no reason why the Legislature would want us to characterize workers like Nini as new hires and thus permit discriminatory conduct against a single class of workers with a pre-existing relationship to the employer, when all other similarly situated employees are protected.

Summing up, the LAD is remedial legislation intended to "eradicate the cancer of discrimination" in our society. As such, it compels liberal construction in order to advance its beneficial purposes. Indeed, our courts have found that "the more broadly [the LAD] is applied the greater its antidiscriminatory impact." *L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ.*, 189 *N.J.* 381, 400, 915 *A.*2d 535 (2007) (quoting *Ptaszynski v. Uwaneme*, 371 *N.J.Super.* 333, 345, 853 *A.*2d 288 (App.Div.), *certif. denied,* 182 *N.J.* 147, 862 *A.*2d 56 (2004)). To the contrary, exceptions in remedial legislation are to be strictly construed. In this case, the plain language of the over-seventy exception is susceptible to more than one interpretation regarding contract nonrenewals. In choosing among those interpretations, the principles to which we have adverted require that we adopt the one that does the least violence to the overall anti-discrimination goals of the LAD. We thus read the "refusing to accept for employment" language as limited to initial hires and decline to expand it to workers whose contracts have not been renewed. That reading reconciles the over-seventy exception with the simultaneously enacted prohibition against forced retirement; harmonizes the "refusing to accept for employment" language with the bar against termination; eliminates disparate treatment of at-will and contract employees; averts the creation of mischief, whereby an employer could place all employees on contract to avoid the age discrimination provisions of the LAD; and treats all employees who have pre-existing work relationships with the employer similarly. In short, the reading of the over-seventy exception that we have here adopted more fully advances the aims of the LAD than the expansive interpretation advanced by the College.

## VI.

We affirm the judgment of the Appellate Division, which reversed the grant of summary judgment in the College's favor and remanded the case for a trial on the merits. Our ruling makes it unnecessary for us to address Nini's contention that the LAD is

preempted by the ADEA, 29 *U.S.C.A.* §§ 621–634, a matter on which the Appellate Division also declined to rule.

Justice RIVERA–SOTO, dissenting.

Proclaiming that the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, "is remedial legislation intended to 'eradicate the cancer of discrimination' in our society[ and, a]s such, it compels liberal construction in order to advance its beneficial purposes[,]" *ante* at 115, 995 *A.2d* at 1104, the majority, albeit conceding that "[t]his is not an easy case[,]" *ante* at 111, 995 *A.2d* at 1102, nevertheless concludes that "the plain language of the over-seventy exception [in the LAD] is susceptible to more than one interpretation regarding contract nonrenewals." *Ante* at 115, 995 *A.2d* at 1104. The majority "thus read[s] the 'refusing to accept for employment' language [of the LAD exception] as limited to initial hires and decline[s] to expand it to workers whose contracts have not been renewed." *Ante* at 115, 995 *A.2d* at 1104.

That conclusion is wrong in at least two separate respects. First, because this case is now moot—and the majority tenders no rationale sufficient to justify rendering a decision in a patently moot case—the proper, reasoned course would be for this Court to exercise decisional modesty, that is, judicial restraint, and vacate the grant of certification in this case. Second, because the contractual nature of the employment at issue here was mandated by the Legislature itself, it is fundamentally improper to reason that, under the LAD, those employed pursuant to a contract are to be treated no differently than those employed at will.

For those reasons, I dissent.

I.

During the pendency of this appeal, the parties notified the Court that they had settled the case and would submit a stipulation of dismissal. *See R.* 2:8–2 (providing procedure for dismissal of appeal or petition for certification). Despite those advices and

in the face of overwhelming authority counseling restraint, the majority nonetheless has elected to decide this case on the merits. *Ante* at 105-06 n. 4, 995 *A.*2d at 1098 n. 4. That is error, unnecessary error.

This appeal is before us on the separate petitions for certification sought by defendants Mercer County Community College, its human relations director, its board of trustees, and its personnel committee trustees, *Nini v. Mercer County Cmty. Coll.,* 200 *N.J.* 206, 976 *A.*2d 383 (2009), as well as by defendant Robert Rose, the president of the college. *Nini v. Mercer County Cmty. Coll.,* 200 *N.J.* 206, 976 *A.*2d 383 (2009).[1] Those separate petitions raise the same question: whether the LAD's exclusion "that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age[,]" *N.J.S.A.* 10:5–12(a), bars plaintiff Rose Nini's claim of age discrimination. Defendants, as the petitioning parties, have notified the Court that plaintiff's claims have been settled. In those circumstances, this case is now moot: having settled the case, defendants " 'ha[ve] voluntarily forfeited [their] legal remedy by the ordinary processes of appeal[.]' " *Perez v. Rent–A–Center, Inc.,* 186 *N.J.* 188, 200, 892 *A.*2d 1255 (2006) (quoting *U.S. Bancorp. Mortgage Co. v. Bonner Mall P'ship,* 513 *U.S.* 18, 25–26, 115 *S.Ct.* 386, 392, 130 *L.Ed.*2d 233, 242–43 (1994)).

Although our state constitution, unlike the federal constitution, does not limit the judicial power to "Cases" and "Controversies," *see U.S. Const.* art. III, § 2, in New Jersey's jurisprudence "[i]t is firmly established that controversies which have become moot or academic prior to judicial resolution ordinarily will be dismissed." *Cinque v. N.J. Dep't. of Corr.,* 261 *N.J.Super.* 242, 243, 618 *A.*2d 868 (App.Div.1993) (citing *Oxfeld v. N.J. State Bd. of Educ.,* 68 *N.J.* 301, 303–04, 344 *A.*2d 769 (1975); *Anderson v. Sills,* 143

---

[1] For ease of reference and because, in the context of this dissent, differentiating among defendants is a distinction without a difference, I refer to all defendants in the aggregate as "defendants," without the need of parsing among them.

*N.J.Super.* 432, 437–38, 363 *A.*2d 381 (Ch.Div.1976)). The reasoning that supports dismissal is straightforward: "as a matter of judicial restraint, courts should not decide cases where a judgment cannot grant relief." *Marjarum v. Twp. of Hamilton,* 336 *N.J.Super.* 85, 92, 763 *A.*2d 796 (App.Div.2000) (citation and internal quotation marks omitted).

That said, this Court has "often declined, however, to dismiss a matter on grounds of mootness, if the issue in the appeal is an important matter of public interest." *Reilly v. AAA Mid–Atl. Ins. Co. of N.J.,* 194 *N.J.* 474, 484, 946 *A.*2d 564 (2008). The necessary condition precedent to the invocation of continued jurisdiction in moot cases, however, is that the case "present[s an] issue of great public importance compelling definitive resolution despite mootness[.]" *Oxfeld, supra,* 68 *N.J.* at 303–04, 344 *A.*2d 769 (footnote and citations omitted). That necessary condition precedent is noticeably absent here.

Save for the unsupported conclusions that "[t]he questions presented in this case ... have a significant effect on senior citizens in the workplace, and ... continue to divide our courts[,]" *ante* at 106 n. 4, 995 *A.*2d at 1098 n. 4, the majority offers no reasoned basis to conclude that the issue presented in this appeal is one of "great public importance compelling definitive resolution despite mootness." Simply said, there has been no showing of some overwhelming avalanche of discriminatory firings or failures to re-hire among those over the age of seventy so as to transform this rather exquisitely unique personnel dispute into a matter of great public importance, this despite the fact that the exemption provision at issue in this case was adopted twenty-five years ago. *See L.* 1985, *c.* 73, § 3.

That conclusion is reaffirmed by the dearth of reported opinions that have construed this exemption provision. Research discloses that the over-seventy LAD exemption has been addressed in but two reported cases, the most recent of which was eleven years ago. *See Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 216, 723 *A.*2d 944 (1999) (explaining that "in 1985 the Legislature

added an age ceiling to the LAD, thus conforming the statute to the [federal Age Discrimination in Employment Act]'s maximum age limitations by providing that 'nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age' "), *aff'g* 307 *N.J.Super.* 333, 704 *A.2d* 1017 (App.Div.1998); *Catalane v. Gilian Instrument Corp.*, 271 *N.J.Super.* 476, 490, 638 *A.2d* 1341 (App. Div.1994) (applying LAD to employee at will who was hired at age 72 and terminated six years later and describing over-seventy exemption as inapplicable). And, in light of the fact that successful prosecutions under the LAD are accompanied by an award of counsel fees, *see N.J.S.A.* 10:5–27.1 (providing that "[i]n any action or proceeding brought under [the LAD], the prevailing party may be awarded a reasonable attorney's fee as part of the cost"), there is no reason to believe that claims such as the one advanced and now settled by plaintiff will somehow repeat themselves but still evade appellate review. *See Roe v. Wade*, 410 *U.S.* 113, 125, 93 *S.Ct.* 705, 713, 35 *L.Ed.*2d 147, 161 (1973) (explaining exception to mootness doctrine when issue is " 'capable of repetition, yet evading review' " (quoting *S. Pac. Terminal Co. v. ICC*, 219 *U.S.* 498, 515, 31 *S.Ct.* 279, 283, 55 *L.Ed.* 310, 316 (1911))).

All in all, because this case abjectly fails to present an issue of such grave public importance as to merit overriding its mootness,[2]

---

[2] The vast majority of the appeals accepted by this Court are on petitions for certification, and "[c]ertification will be granted only if the appeal presents a question of general public importance which has not been but should be settled by the Supreme Court[.]" *R.* 2:12–4. Despite the parallels in the language used, the notion that this Court will consider a moot case if it presents "an important matter of public interest[,]" *Reilly, supra,* 194 *N.J.* at 484, 946 *A.2d* 564, or an "issue of great public importance compelling definitive resolution despite mootness[,]" *Oxfeld, supra,* 68 *N.J.* at 303, 344 *A.2d* 769, must mean something more than what would justify a grant of certification in the first instance. Otherwise, all appeals on certification to this Court would survive a mootness challenge, a proposition squarely debunked by the many cases in which this Court has granted certification, yet later declared an issue moot and, hence, not subject to review. *See, e.g., Do-Wop Corp. v. City of Rahway,* 168 *N.J.* 191, 200, 773 *A.2d* 706 (2001) (dismissing certain appeal issues as moot); *Del. Bay Waterman's*

this Court should stay its hand and await a ripe case for determination. Because the majority fails to abide by that most fundamental precept of judicial restraint, I dissent.

## II.

The majority has elected to address the merits of this now moot appeal; I too, then, must speak to them.

Once again blurring the stark distinctions at law between employees at will and those employed under a contract for a fixed term, *see, e.g., D'Annunzio v. Prudential Ins. Co. of Am.,* 192 *N.J.* 110, 127, 927 *A.2d* 113 (2007) (Rivera–Soto, J., dissenting); *Stomel v. City of Camden,* 192 *N.J.* 137, 157, 927 *A.2d* 129 (2007) (Rivera–Soto, J., dissenting), the majority seeks to prove its point by a discredited debating device: it creates a straw man and then proceeds to knock it down.[3] According to the majority, it is contrary to the LAD's purpose to "permit[ ] employers to place their aging employees under contract, thus precluding them from resorting to the salutary protections of the LAD[,]" *ante* at 113, 995 *A.2d* at 1103, as if that ever were a choice defendants had. That bugaboo simply has no place within the confines of this case.

Plaintiff originally was employed by defendant in 1979; she was then forty-seven years old. Over the next twenty-six years, plaintiff was promoted by defendants until she held the position of dean of corporate and community programs. For that entire time

---

*Ass'n v. N.J. Dep't of Envtl. Prot.,* 153 *N.J.* 345, 351, 709 *A.2d* 192 (1998) (dismissing appeal as moot); *In re Contract for Route 280, Section 7U Exit Project,* 89 *N.J.* 1, 444 *A.2d* 51 (1982) (dismissing appeal as moot, among other reasons).

[3] Tellingly, no claim is or can be made to plaintiff's continued "right" to be employed by defendant under a contract; once the employment contract expired by its own terms, plaintiff had no property right to continued employment. *Battaglia v. Union County Welfare Bd.,* 88 *N.J.* 48, 56–57, 438 *A.2d* 530 (1981); *see also Bd. of Regents v. Roth,* 408 *U.S.* 564, 578, 92 *S.Ct.* 2701, 2709, 33 *L. Ed.*2d 548, 561 (1972) (holding that public employee possessed no property right in continued employment after expiration of employment contract).

period, plaintiff was employed pursuant to a series of written contracts, each for a fixed term. That process was not a choice by either plaintiff or defendants; it was mandated by the Legislature. Four months *before* plaintiff was employed by defendants, the Legislature amended *N.J.S.A.* 18A:60–14 to provide, in language that remains unchanged to this day, as follows:

> Members of the professional staff not holding faculty rank may be appointed by a board of trustees for 1–year terms; provided, however, that after employment in a college for 5 consecutive academic years or for the equivalent of 5 academic years within a period of any 6 consecutive academic years, such employees may be offered contracts of no more than 5 years in length. During the period of such contracts, such employees shall be subject to dismissal only in the manner prescribed by subarticle B of article 2 of chapter 6 of Title 18A of the New Jersey Statutes, and must be notified by the president not later than 1 year prior to the expiration of such contracts of the renewal or nonrenewal of the contract.

Thus, this case presents rather unique circumstances utterly independent of plaintiff's age: plaintiff's employment by defendants was required, by law, to be pursuant to a written contract.

The obligation to employ plaintiff via a written contract—and the rehiring that was effected each time a new contract was entered into—were not hollow gestures. Employment pursuant to a contract entitles the contracted employee to contract damages for its unlawful breach, a remedy otherwise unavailable to an employee at will. More to the point, and as explicitly provided in *N.J.S.A.* 18A:60–14, defendants' non-teaching staff employed by contract can be dismissed during the pendency of the contract only by adhering to the rather stringent due process procedures required to dismiss a tenured faculty member, *see N.J.S.A.* 18A:6–9 to –25.[4] Both of these elements place plaintiff in a position

---

[4] Ironically, the majority's reasoning also has the effect of elevating a non-teaching staffer far above a tenured faculty member, as the latter in fact may be required to retire at age seventy without liability under the LAD. *N.J.S.A.* 10:5–2.2 (providing that "[n]otwithstanding the provisions of section 1 of P.L. 1938, c. 295 (C. 10:3–1) and section 8 of P.L. 1962, c. 37 (C. 10:5–2.1), an employee who has attained 70 years of age who is serving under a contract of tenure or similar arrangement providing for tenure at a public or private institution of higher education may, at the option of the institution, be required to retire"). Perversely, then, under the majority's construct, a tenured faculty member approaching

markedly different than and superior to employees at will. Those contract-based benefits must also carry with them a concomitant burden: that plaintiff's employment pursuant to a contract for a term would expire; after which and in the absence of a new contract of employment, there was no reasonable expectation of continued employment; and, once past age seventy, there would be no recourse to the LAD for an age discrimination claim based on a failure to re-hire.

The rhetorical notion advanced by the majority—that "expanding the over-seventy exception to afford carte blanche to employers in the contract renewal realm would effectively create a two-tiered system in which fixed-term contract employees are afforded fewer rights than those serving at-will[,]" *ante* at 114, 995 *A.*2d at 1103—is as sensationalistic as it is wrong. It ignores one of the bedrock principles of contract law: that "courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made." *McMahon v. City of Newark*, 195 *N.J.* 526, 545, 951 *A.*2d 185 (2008) (citations, internal quotation marks and editing marks omitted). The governing proposition is clear and unequivocal: "when the terms of a contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties because the parties are entitled to make their own contracts." *Id.* at 545–46, 951 *A.*2d 185 (citations, internal quotation marks and editing marks omitted). For that reason, "as a general rule, courts should enforce contracts as the parties intended." *Id.* at 546, 951 *A.*2d 185 (citation, internal quotation marks and editing marks omitted). Recognizing the proper limits of a court, it is beyond question that "the judicial task is clear: the court must discern and implement the common intention of the parties and its role is to consider what is written in the context of the circumstances at the time of drafting

---

age seventy would be better served switching to employment under a contract, thereby avoiding a statutorily authorized forced retirement. Such an absurd result cannot stand. Yet, that is precisely the direct and logical consequence of the majority's decision.

and to apply a rational meaning in keeping with the expressed general purpose." *Ibid.* (citation, internal quotation marks and editing marks omitted).

In that contractual context, the over-seventy exception to the LAD created by the Legislature clearly applies on each hiring and, perforce, on each contractual re-hiring decision. Defendants here had no choice: they were restricted by an Act of the Legislature to hiring plaintiff only pursuant to a contract for a defined term, a term that, at some point, would expire. It was the Legislature that created the scenario whereby plaintiff would be subject to a re-hiring process each time a contract of employment ended by its own terms; and, it was the Legislature that decreed that hiring decisions for those over seventy would be exempt from the reach of the LAD. In those circumstances, it cannot be principled legal analysis to obligate defendants—for over more than a quarter-century—to hire plaintiff only pursuant to a written contract and then deny defendants the miserly exception the LAD plainly authorizes, all because this Court, under the pious guise of the LAD being "remedial social legislation[,]" *ante* at 108, 995 *A.*2d at 1100, is unwilling to acknowledge and apply long-standing principles of law. That is legally unjustifiable reasoning in which I will not join.

## III.

I reject, as improvident, the notion that, in the circumstances presented, this Court nevertheless should decide this now patently moot appeal. I also reject, as erroneous, the reasoning embraced by both the Appellate Division and the majority. Because the proper result here is to reinstate the trial court's correctly reasoned grant of summary judgment in favor of defendants, I dissent.

*For affirmance*—Chief Justice RABNER, and Justices LONG, LaVECCHIA, ALBIN, WALLACE and HOENS—6.

*For reversal*—Justice RIVERA–SOTO—1.