JUSTICE ALBIN, concurring.
I concur with my colleagues that the purported arbitration clause in this consumer contract case is unenforceable because its confusing and contradictory provisions do not demonstrate that the parties mutually assented to arbitrate their dispute. Unlike my colleagues, however, I would not sidestep the issue on which this Court granted certification: whether Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 99 A.3d 306 (2014), cert. denied, --- U.S. ----, 135 S.Ct. 2804, 192 L.Ed.2d 844 (2015), runs afoul of Kindred Nursing Centers Ltd. Partnership v. Clark, 581 U.S. ----, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017), and the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16.
Although defendants' petition for certification contended that Atalese could not be reconciled with Kindred Nursing, defendants conceded at oral argument that those two cases were not in conflict with each other. In response to a question from *782 the Court, "So your contention is that Atalese in and of itself does not violate Kindred Nursing but the Appellate Division overread it," defendants' **328 counsel replied, "Yes, absolutely." Instead, defendants argued that the arbitration agreement did not violate Atalese.
Defendants' concession did not deprive this Court of its authority to decide the issue raised in defendants' petition -- an issue argued forcefully from different vantage points by the amici curiae before us.[1] That issue will not go away. Tomorrow is not a better time to resolve an issue on which courts need emphatic guidance. In my view, our jurisprudence, including Atalese, conforms to the FAA, and Kindred Nursing has not altered that equation.
Indeed, the Court reaffirms the fundamental principle animating Atalese-- an arbitration clause in a consumer contract is unenforceable unless the contract's language conveys in some manner "that there is a distinction between agreeing to resolve a dispute in arbitration and in a judicial forum." Ante at 322, 199 A.3d at 788 (citing Atalese, 219 N.J. at 442-44, 99 A.3d 306 ). The Court also acknowledges that mutual assent -- the basic element of a contract -- requires that consumers have an understanding that arbitration means their disputes will be resolved out of court in an alternative forum. Ante at 319-21, 199 A.3d at 777. If Kindred Nursing were antithetical to the simple precept that consumers have a right to know what they are signing, then much of the reasoning of today's opinion would be rendered a nullity.
But Kindred Nursing is not in conflict with Atalese and the state-law jurisprudence on which Atalese is founded.
I.
The United States Supreme Court in Kindred Nursing applied the well-established FAA requirement that arbitration agreements must be placed "on equal footing with all other contracts."
**329 137 S.Ct. at 1424 (quoting DIRECTV, Inc. v. Imburgia, 577 U.S. ----, 136 S.Ct. 463, 465, 193 L.Ed.2d 365 (2015) ). In doing so, the Court struck down a new rule adopted by the Kentucky Supreme Court concerning powers of attorney that singled out arbitration agreements for disfavored treatment. Id. at 1429.
In Kindred Nursing, a husband conveyed to his wife and a mother conveyed to her daughter powers of attorney granting them broad authority to manage their loved ones' affairs, including the legal right to enter into contracts. Id. at 1425. The husband and mother were admitted as residents into a Kindred nursing home. Ibid. Exercising their powers as legal representatives of their loved ones, the wife and daughter signed documents, including arbitration agreements, required by the nursing home.[2] Ibid.
Later, they sued the nursing home for substandard care that they alleged caused *783 the deaths of their husband and mother. Ibid. The Kentucky Supreme Court declared the arbitration agreements invalid because the powers of attorney -- despite the broad grants of authority to the family-member representatives to act on behalf of their loved ones -- did not specifically authorize those representatives to enter arbitration agreements. Id. at 1425-26. That precise authorization was necessary, the Kentucky high court asserted, because arbitration denied the nursing home residents (and their estates) access to the courts. Id. at 1426.
The Kentucky Supreme Court's newly adopted power-of-attorney "clear-statement rule" violated the FAA because it was "too tailor-made to arbitration agreements" and singled out arbitration agreements "for disfavored treatment." Id. at 1426-27. The United States Supreme Court observed that "[n]o Kentucky court ... ha[d] ever before demanded that a power of attorney explicitly **330 confer authority to enter into contracts implicating constitutional guarantees." Id. at 1427. Despite the Kentucky Supreme Court's assertions, its clear-statement rule, in reality, applied only to arbitration agreements. Id. at 1427-28 (noting "the arbitration-specific character of the rule, much as if it were made applicable to arbitration agreements and black swans"). For that reason, "[t]he Kentucky Supreme Court specially impeded the ability of attorneys-in-fact to enter into arbitration agreements," and therefore its clear-statement rule did not pass muster under the FAA. Id. at 1429.
Unlike the Kentucky Supreme Court's decision in Kindred Nursing, New Jersey case law does not disfavor or discriminate against arbitration agreements.
II.
In Atalese, this Court reaffirmed principles long embedded in our jurisprudence. Under the FAA, state courts may construe arbitration agreements under general contract principles, provided arbitration agreements are treated no differently from other agreements. Atalese, 219 N.J. at 441, 99 A.3d 306. Although the FAA promotes a national policy favoring arbitration, an arbitration agreement, like any other agreement, may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." Ibid. (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85, 800 A.2d 872 (2002) (quoting, in turn, 9 U.S.C. § 2 ) ). The FAA "permits agreements to arbitrate to be invalidated by generally applicable contract defenses," so long as those defenses do not discriminate against arbitration. Ibid. (internal quotation marks omitted) (quoting AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ).
Like all contractual agreements, an arbitration agreement must be the product of mutual assent. Atalese, 219 N.J. at 442, 99 A.3d 306. In turn, "[m]utual assent requires that the parties have an understanding of the terms to which they have agreed." Ibid.
Atalese wove together two interconnected strands of our state-law jurisprudence in assessing the validity of an arbitration agreement **331 -- both of which applied neutral principles of state contract law. One strand involves contracts in which individuals waive their statutory or constitutional rights. Our Court has consistently maintained that a person who enters into an arbitration agreement should understand that he is waiving his right to prosecute or defend his claim in a civil court or judicial forum. See Morgan v. Sanford Brown Inst., 225 N.J. 289, 308-09, 137 A.3d 1168 (2016) ("[W]hen a contract contains a waiver of rights -- whether in an arbitration or other clause -- the waiver must be clearly *784 and unmistakably established." (internal quotation marks omitted) (quoting Atalese, 219 N.J. at 444, 99 A.3d 306 ) ); Leodori v. CIGNA Corp., 175 N.J. 293, 302, 814 A.2d 1098 (2003) ("[A] waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."); Martindale, 173 N.J. at 95, 800 A.2d 872 (stating in reference to arbitration agreements that "[t]he Court will not assume that employees intend to waive [their statutory rights] unless their agreements so provide in unambiguous terms" (second alteration in original) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 135, 773 A.2d 665 (2001) ) ); Garfinkel, 168 N.J. at 136, 773 A.2d 665 ("[W]e will not assume that an employee intends to surrender [his] choice [of an administrative or judicial forum in an LAD case] in favor of arbitration unless that intention has been 'clearly and unmistakably established[.]' " (fourth alteration in original) (quoting Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Ed., 78 N.J. 122, 140, 393 A.2d 267 (1978) ) ); Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282, 633 A.2d 531 (1993) ("A clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue.").[3] **332 "The requirement that a contractual provision be sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right is not specific to arbitration provisions." Atalese, 219 N.J. at 443, 99 A.3d 306. In Atalese, we catalogued a non-exhaustive list of non-arbitration cases involving a party's waiver of statutory rights in which our courts have required that the waiver be clear and unmistakable. Id. at 443-44, 99 A.3d 306 (citing examples). In light of the general applicability of this doctrine to the waiver-of-rights line of cases, we emphasized in Atalese that "[a]rbitration clauses are not singled out for more burdensome treatment than other waiver-of-rights clauses under state law." Id. at 444, 99 A.3d 306.
The other strand of our jurisprudence involves the modest acknowledgement that the term arbitration is not self-defining. Id. at 442, 99 A.3d 306. This Court has recognized that "[t]he meaning of arbitration is not self-evident to the average consumer." Morgan, 225 N.J. at 308, 137 A.3d 1168. "[A]n average member of the public may not know -- without some explanatory comment -- that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Atalese, 219 N.J. at 442, 99 A.3d 306. Notably, "[o]ne statistical study concluded 'that consumers have no idea what they are agreeing to when they enter into contracts containing arbitration clauses' and that many consumers believe that access to 'court will be available to them, if only as a last resort.' " Morgan, 225 N.J. at 308 n.7, 137 A.3d 1168 (quoting Jeff Sovern et al., *785 "Whimsy Little Contracts" with Unexpected Consequences: An Empirical Analysis of Consumer Understanding of Arbitration Agreements, 75 Md. L. Rev. 1, 63 (2015) ).[4] **333 Underscoring the ambiguity about the precise meaning of arbitration are court-adopted schemes that allow for judicial review of an arbitrator's decision. For example, Rule 4:21A-1 requires parties to arbitrate automobile negligence actions, other personal injury actions, and non-personal injury actions. R. 4:21A-1(a)(1) to (3). Under Rule 4:21A-6, however, arbitration may be only the first step in the dispute resolution process. A party disappointed with the result of arbitration can still have the dispute decided by a jury or the court. After an arbitration decision, "[a]n action in which a timely trial de novo has been demanded by any party shall be returned, as to all parties, to the trial calendar for disposition." R. 4:21A-6(c). Under our court rules, a mandatory arbitration proceeding does not necessarily result in a binding outcome. Ibid.
Accordingly, nothing better illustrates that arbitration is not a self-defining term than our court rules. There is no reason to believe that the average consumer would understand that the term arbitration -- without some explanation -- means that court review or relief is unavailable.
Not only because of our waiver-of-rights case law, but also, separately, because of the uncertainty that may arise from the bare use of the term arbitration, this Court in Atalese came to the unremarkable conclusion that the parties to a consumer contract involving an arbitration clause "must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." 219 N.J. at 445, 99 A.3d 306. An arbitration clause should at least be clear about its meaning; mutual assent is not achieved **334 through ignorance. See Marchak, 134 N.J. at 282, 633 A.2d 531 ("A[n arbitration] clause depriving a citizen of access to the courts should clearly state its purpose."); see also N.J.S.A. 56:12-2 ("A consumer contract ... shall be written in a simple, clear, understandable and easily readable way.").
We have stressed that to accomplish the goal of allowing a consumer to make an informed choice about the forum in which a dispute will be resolved, no "magic words" or "prescribed set of words must be included in an arbitration clause." Atalese, 219 N.J. at 439, 447, 99 A.3d 306. "Our courts have upheld arbitration clauses phrased in various ways when those clauses have explained that arbitration is a waiver of the right to bring suit in a judicial forum." Id. at 444-45, 99 A.3d 306 (citing examples); see also Morgan, 225 N.J. at 309, 137 A.3d 1168. However an arbitration agreement is worded, it must simply make clear that the "consumer is choosing to arbitrate disputes rather than have them resolved in a court of law." Atalese, 219 N.J. at 447, 99 A.3d 306.
This sensible, neutral, nondiscriminatory application of our state law does not burden legitimate arbitration agreements; it simply requires reasonable notice to the consumer of the meaning of an arbitration agreement. Most arbitration agreements comply with the exceedingly low bar set by Atalese and inform consumers of what they need to know.
*786 The United States Supreme Court's FAA precedents, such as Concepcion, are not hostile to an informed citizenry. Those cases do not bar an undemanding state-law requirement that allows consumers a minimal understanding that in choosing arbitration they will not have access to a judicial forum. Nothing in Kindred Nursing changes that landscape or undermines the efficacy of decades of our jurisprudence, including Atalese.
III.
The Court today has bypassed the opportunity to put the issue on which it granted certification to rest. I am confident, however, that the Court, when next presented with this issue, will reaffirm **335 the continued vitality of our long-established jurisprudence. In Atalese, we held, consistent with that jurisprudence, that an arbitration clause must simply explain to the average consumer what it forecloses -- the right to a judicial forum for the resolution of a dispute. Every contract must explain in some way its purpose. We do not discriminate against an arbitration agreement by requiring it to do the same. Kindred Nursing does not hold otherwise.

"We have often declined ... to dismiss a matter on grounds of mootness, if the issue in the appeal is an important matter of public interest." Nini v. Mercer Cty. Cmty. Coll., 202 N.J. 98, 105 n.4, 995 A.2d 1094 (2010) (quoting Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 484, 946 A.2d 564 (2008) ).

Notably, the nursing home's arbitration clause fully complied with New Jersey law because the clause explained that "[b]inding arbitration means that the parties are waiving their right to a trial, including their right to a jury trial, their right to trial by a Judge and their right to appeal the decision of the arbitrator(s)." See Extendicare Homes, Inc. v. Whisman, 478 S.W.3d 306, 317 (Ky. 2015) (alteration in original), judgment rev'd in part, vacated in part sub nom. Kindred Nursing, 137 S.Ct. 1421.

Significantly, the United States Supreme Court uses the same language found in our State's waiver-of-rights jurisprudence in determining whether parties have agreed to arbitrate the threshold question of arbitrability. In Henry Schein, Inc. v. Archer & White Sales, Inc., the Court reaffirmed that "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.' " 586 U.S. ----, ----, 139 S.Ct. 524, --- L.Ed.2d ----, 2019 WL 122164 (2019) (slip op. at 8) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ). In other words, in the absence of clear and unmistakable evidence otherwise, the parties have not waived a court resolution of the issue.

A "study by the Consumer Financial Protection Bureau similarly concluded that a majority of credit-card consumers whose agreements contained arbitration clauses did not understand that they could not file suit in court." Morgan, 225 N.J. at 308 n.7, 137 A.3d 1168 (citing Consumer Fin. Prot. Bureau, Arbitration Study Report to Congress, Pursuant to Dodd-Frank Wall Street Reform and Consumer Protection Act § 1028(a), § 3 at 3 (2015), http://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf).