968 A.2d 739 (2009)
406 N.J. Super. 547
Rose NINI, Plaintiff-Appellant,
v.
MERCER COUNTY COMMUNITY COLLEGE, Robert Rose, in his individual and official capacities, Vanessa Wilson, in her individual and official capacities, Board of Trustees of Mercer County Community College, and its Personnel Committee Trustee, in their official capacities only, Defendants-Respondents.
DOCKET NO. A-2802-07T3.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 2009.
Decided April 23, 2009.
*740 Steven Blader, Lawrenceville, argued the cause for appellant (Szaferman, Lakind, Blumstein & Blader, attorneys; Mr. Blader, of counsel and on the brief).
Thomas F. Gallagher, Cherry Hill, argued the cause for respondent Robert Rose (Cozen O'Connor, attorneys; Mr. Gallagher, of counsel and on the brief).
Walter F. Kawalec, III, Cherry Hill, argued the cause for respondents Mercer County Community College, Vanessa Wilson and Board of Trustees (Marshall, Dennehey, Warner, Coleman & Goggin, *741 attorneys; Richard L. Goldstein and Mr. Kawalec, on the brief).
Before Judges CUFF, FISHER and C.L. MINIMAN.
The opinion of the court was delivered by
CUFF, P.J.A.D.
Plaintiff Rose Nini filed a complaint alleging age-based discrimination when her employment contract with defendant Mercer County Community College (MCCC) was not renewed in 2005. Nini had been employed by MCCC for over twenty-five years; she was seventy-three years old when her employment ceased. We review an order granting summary judgment in favor of the college. The motion judge held that the college did not violate the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-4 to -49, because the statute allows an employer to refuse to renew an employment contract of an employee over seventy years of age. We disagree and reverse.
In reviewing an order granting summary judgment, we apply the same standard as employed by the motion judge. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). The motion judge must determine whether the evidence, "when viewed in the light most favorable to the non-moving party," is "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Rule 4:46-2(c) requires a court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." The facts viewed in the light required by Brill are as follows:
Plaintiff commenced her employment at MCCC in 1979 as an executive assistant to the president of the college. Prior to this time, she was a member of the Board of Trustees of MCCC (Board). In 1982, she became Dean of the Division of Corporate and Community Programs (DCCP),[1] a position she held until her final contract expired on June 30, 2005. In late 2002, in addition to her regular duties, she also assumed management of the college's conference center.
As a non-faculty employee, plaintiff was employed through a series of contracts. In accordance with an agreement between the Board and the MCCC Professional Staff Federation, terms of appointment for contract employees correspond with the number of years the employee has worked for MCCC. Employees who have continuously held positions at MCCC for ten or more years are entitled to three-year reappointments. Contract employees, who, like plaintiff, have worked for MCCC for six or more years, are entitled to a full year's notice of non-reappointment.
On June 27, 2001, plaintiff, then sixty-nine years old, received a letter from acting president Eric M. Perkins informing her that the Board was considering nonrenewal of her contract. Although Perkins admitted that he considered plaintiff a successful manager overall, recent problems and questions about her performance caused Perkins and the Board to decide *742 against renewal. A new president, Robert Rose, appointed in approximately July 2001, requested renewal of plaintiff's contract.
Three years later, on June 23, 2004, Rose sent plaintiff a letter informing her that she was "not recommended for reappointment as Dean" and that her "current contract [would] expire June 30, 2005." Plaintiff was surprised by the decision because she had never received poor evaluations, and believed nonrenewal was generally confined to poor performance.
In the June 23, 2004 letter, Rose told plaintiff that together they would establish a "performance plan" for her department for the following six months, and that her nonrenewal would be reviewed by February 2005. Despite the fact that plaintiff had never received notice of performance deficiencies prior to notice of her nonrenewal, during a meeting Rose provided her with three performance-related reasons for the decision: (1) her tendency to micromanage caused discontent among her staff; (2) her inconsistent and unclear financial reporting had a negative effect on the budgeting process and other financial aspects of the college as a whole; and (3) he believed that plaintiff was untrustworthy.
Although plaintiff never received a performance improvement plan, she did have several one-on-one meetings with Rose following notice of nonrenewal. Plaintiff claims that in an August 2004 meeting, Rose complimented her on her success with the conference center, but then "made it very clear to [her] that he thought [she] had no right to be working at [her] age." He told her that employees of similar age were considering retirement and suggested she take early retirement as well.
Prior to receiving notice of nonrenewal, plaintiff claims that at meetings Rose held with department heads several people discussed "age and incompetence and being dead wood" and made jokes about getting rid of the oldest employees. Additionally, plaintiff says she was told that MCCC Human Relations Director Vanessa Wilson said "the college had to get rid of the old-timers and bring in new blood."
On August 31, 2004, plaintiff's staff sent a letter of support to Rose, stating:
DCCP is a joyful, creative and exciting place to work and [plaintiff] is the key motivator behind this. She has provided solid leadership for her team for 25 years.... She has won the respect of her staff....
Her commitment to quality is her hallmark....
She built DCCP into the almost $4 million operation it is today, and the Conference Center is the realization of her vision.
Plaintiff and at least three other staff members assert that she knew nothing of the letter until after it was sent. Rose claims that two people in DCCP reported to him that they felt pressured to sign it; however, one of those two employees, Lynn Coopersmith, stated in her deposition that she felt plaintiff "was an exceptional[ly] good manager," she and the others wanted to support plaintiff, she was not pressured to sign the letter, and she spoke to Rose personally in support of plaintiff.
On September 24, 2004, plaintiff sent a letter to the chairman of the Board and two other Board members requesting the Board's review of the events surrounding her nonrenewal. She stated that her "strong 25-year-record" and Rose's comments led her to believe that her sudden nonrenewal was a result of her age. She pointed out that she took on more responsibilities despite her age and was successful in reaching her goals.
*743 Plaintiff did not receive a response to her letter and sent another on October 18, 2004, addressing her concerns that Rose was retaliating against her for her first letter by planning to eliminate her division. She again requested the Board's involvement.
On January 24, 2005, the Board commenced an investigation of plaintiff's allegations. Attorney Julie Colin interviewed plaintiff, Rose, and Wilson, and issued her findings in a report dated March 28, 2005. Colin noted that plaintiff "presented facts that lead to a prima facie case of age discrimination, although those facts have been refuted with legitimate business purposes for the non-renewal." She pointed out that plaintiff's allegations would be difficult to support based on "the age of many, many of the employees at the college," but emphasized that the contradictory statements of the parties posed a credibility issue that would be difficult to resolve without further investigation. To Colin's knowledge, no further investigation occurred.
At a progress review meeting in early March 2005, Rose informed plaintiff that, although her division was doing well, he intended to follow through with the nonrenewal. In a letter dated March 24, 2005, Rose reiterated that plaintiff's contract would expire on June 30, 2005, and would not be renewed. Rose offered plaintiff a six-month extension of her contract due to a potential reorganization of her division and his desire for her to assist with the transition, but plaintiff declined. It is unclear from the record whether the position vacated by plaintiff was filled.
On September 7, 2005, plaintiff filed a complaint alleging age-based discrimination and retaliation against defendants Rose, MCCC, the Board, and Wilson.[2] Defendants moved for summary judgment. The motion judge granted defendants' motion and held that N.J.S.A. 10:5-12a permitted an employer to decline to renew an employment contract of an employee seventy years of age or older.
In order to successfully assert a prima facie claim of age discrimination under the LAD, plaintiff must show that: (1) she was a member of a protected group; (2) her job performance met the "employer's legitimate expectations"; (3) she was terminated; and (4) the employer replaced, or sought to replace, her. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450, 867 A.2d 1133 (2005). In the case of age discrimination, the fourth element "require[s] a showing that the plaintiff was replaced with `a candidate sufficiently younger to permit an inference of age discrimination.'" Bergen Commercial Bank v. Sisler, 157 N.J. 188, 213, 723 A.2d 944 (1999) (quoting Kelly v. Bally's Grand, Inc., 285 N.J.Super. 422, 429, 667 A.2d 355 (App.Div.1995)). If plaintiff can establish a prima facie case, the burden of production then "shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action." Zive, supra, 182 N.J. at 449, 867 A.2d 1133. If the employer provides such a reason, plaintiff must show that the reason "was merely a pretext for discrimination." Ibid.
The motion judge determined that, if plaintiff had been under seventy years of age, factual issues existed which could cause a trier of fact to find in plaintiff's favor. We agree. Plaintiff can show that she was a member of a protected class who was terminated despite indications that she was satisfactorily performing her job. The record does not allow a determination of whether she was replaced with a significantly younger individual. Additionally, *744 despite defendants' proffered non-discriminatory reasons for plaintiff's termination, a trier-of-fact could reasonably find that these reasons are pretextual.
N.J.S.A. 10:5-12, however, states in pertinent part:
It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of the ... age ... of any individual ... to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; ... provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age .... (emphasis added).
Therefore, if a plaintiff is over seventy and is either not "accept[ed] for employment" or not promoted, the LAD exclusion applies and the foregoing analysis is unnecessary. The issue here is whether the over-seventy exception extends to renewal of employment contracts of existing employees.
In construing this section, we are mindful that "[e]xceptions in a legislative enactment are to be strictly but reasonably construed, consistent with the manifest reason and purpose of the law." Serv. Armament Co. v. Hyland, 70 N.J. 550, 558-59, 362 A.2d 13 (1976). Moreover, the purpose of the LAD is "to eradicate the cancer of discrimination," Jackson v. Concord Co., 54 N.J. 113, 124, 253 A.2d 793 (1969), thus requiring the over-seventy exception to be strictly construed to achieve this purpose.
Catalane v. Gilian Instrument Corp., 271 N.J.Super. 476, 638 A.2d 1341 (App. Div.), certif. denied, 136 N.J. 298, 642 A.2d 1006 (1994), is the only published case in which an appellate court has interpreted the over-seventy exception. There, the plaintiff alleged that his termination at age seventy-eight was improperly based on his advanced age, id. at 486-88, 638 A.2d 1341, and the employer responded that the plaintiff was not protected by the LAD from an age-based termination because he was hired after age seventy, id. at 489, 638 A.2d 1341. Finding the over-seventy exception "plain and unambiguous," we determined that "[i]t entitles an employer only to refuse to hire or promote a person over 70 years of age. Termination is not excepted." Id. at 490, 638 A.2d 1341; see also Bergen Commercial Bank v. Sisler, 307 N.J.Super. 333, 342 n. 3, 704 A.2d 1017 (App.Div.1998) ("Termination of persons over age seventy due to age remains an unlawful employment practice."), aff'd, 157 N.J. 188, 723 A.2d 944 (1999). We noted that if the Legislature intended for the LAD's protection from age-based termination to stop at age seventy, it would have clearly stated so. Catalane, supra, 271 N.J.Super. at 490, 638 A.2d 1341.
Here, the parties agree that the over-seventy exception is unambiguous in that it does not insulate terminations. As pointed out by the court in Catalane, the plain meaning of refusal to accept for employment is refusal to hire. Thus, in order for plaintiff to escape from the exception, a contract nonrenewal must be equivalent to a termination rather than a refusal to hire. Case law supports such a proposition.
In Battaglia v. Union County Welfare Board, 88 N.J. 48, 62-63, 438 A.2d 530 (1981), cert. denied, 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982), the Court ruled that "no functional difference exists between the failure to reappoint at the end of a fixed term and the dismissal of an at-will *745 employee." See also Squeo v. Borough of Carlstadt, 296 N.J.Super. 505, 687 A.2d 311 (App.Div.1997) (employer may not fail to reappoint an employee in a position without policymaking or confidential duties for discriminatory reasons). Similarly, in Blume v. Denville Township Board of Education, 334 N.J.Super. 13, 29-34, 756 A.2d 1019 (App.Div.2000), the court considered a disabled individual's discriminatory contract nonrenewal an improper termination under the LAD.
Contract nonrenewals have been equated to terminations in at least one age discrimination case. In Rubin v. Forest S. Chilton, 3rd, Memorial Hospital, Inc., 359 N.J.Super. 105, 819 A.2d 22 (App.Div. 2003), a hospital terminated the contracts of two pathologists, who, for at least twenty-five years, contracted annually to provide pathology services to the hospital. We found that the doctors, as independent contractors, were protected by the LAD under N.J.S.A. 10:5-12, which provides that it is an unlawful discrimination "[f]or any person to refuse to ... contract with... any other person on the basis of race, creed, color, national origin, ancestry, age, sex ... of such other person...." Id. at 109-10, 819 A.2d 22. The court further stated that "[t]o distinguish between a refusal to enter into a contract and the termination of a contract where the motivation is illegal discrimination would mock the beneficial goals of the LAD, remedial legislation which should be liberally construed to advance its beneficial purposes." Id. at 110-11, 819 A.2d 22.
Thus, although, as defendants point out, plaintiff's contract did not provide her with the expectation that her employment would continue beyond the contract's expiration, as the court made clear in Rubin, if defendants' decision not to renew was based on plaintiff's age, there is no difference for purposes of the LAD between plaintiff's nonrenewal and termination. Moreover, if independent contractors are entitled to the protection of the LAD when their contracts are not renewed for discriminatory reasons, surely plaintiff, whose lengthy employment relationship with MCCC, albeit contractual rather than at-will, is entitled to the same protections. To find otherwise would impede the general purpose of the LAD "to eradicate the cancer of discrimination." Jackson, supra, 54 N.J. at 124, 253 A.2d 793.
We hold that the over-seventy exception of N.J.S.A. 10:5-12a should not be interpreted to equate contract nonrenewals with a new hire. Stated differently, the over-seventy statutory exception should be interpreted to equate a contract nonrenewal with a termination and to bar an age-based nonrenewal. Accordingly, the motion judge erred by holding that the nonrenewal of plaintiff's contract was a "refus[al] to accept for employment" within the meaning of the over-seventy exception. The over-seventy exception does not apply and plaintiff's claim must be considered on the merits.[3]
Reversed and remanded for further proceedings.
NOTES
[1] Plaintiff's title changed over the course of her employment as Dean, but the job functions remained approximately the same. For purposes of this opinion, we use her final title.
[2] In August 2007, Wilson was voluntarily dismissed from the case.
[3] Plaintiff also urges that we hold the over-seventy exception of the LAD conflicts with and is preempted by federal law. Due to our interpretation of the exception, we need not consider this issue.