**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1016-17T1

DOUGLAS HAZLETT,

     Plaintiff-Appellant,

v.

SANDY ALEXANDER, INC.,

     Defendant-Respondent.

_____

          Submitted October 3, 2018 - Decided  October 24, 2018

          Before Judges Koblitz, Ostrer, and Mayer.

          On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3875-15.

          Laddey, Clark & Ryan, LLP, attorney for appellant (Thomas N. Ryan, Jessica A. Jansyn, and Michael R. Darbee, on the briefs).

          Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC, attorneys for respondent (Andrew J. Bernstein and Kaitlin R. Walsh, on the brief).

PER CURIAM

Plaintiff Douglas Hazlett appeals from the following orders: a June 23, 2017 order denying his motion to extend discovery; a September 18, 2017 order granting summary judgment in favor of defendant Sandy Alexander, Inc.; and an October 5, 2017 order denying plaintiff's motion for reconsideration of those orders. We affirm.

Plaintiff, an employee of defendant for almost nine years, alleged he was terminated from his sales and marketing position based on his age. Plaintiff filed suit against defendant alleging age discrimination and a hostile work environment.

Plaintiff's primary job responsibility for defendant involved sales and marketing. Plaintiff's other job responsibilities included sales administration and implementation of the company's "salesforce.com" software. Plaintiff's duties also included marketing green technology initiatives, negotiating renewable energy credits on behalf of defendant, and preparing an annual sustainability report.

Defendant experienced financial difficulty in 2008, which continued through 2015. In 2010, in an effort to improve defendant's financial situation, plaintiff retained Design Squared, an outside marketing agency, to assist with the company's marketing as a cost-saving measure. From 2010 through 2013,

2

defendant paid Design Squared the following sums: $25,931.30 in 2010, $22,250.00 in 2011, $27,300.00 in 2012, and $6,035.00 in 2013.

During his employment with defendant, plaintiff received several warnings regarding his behavior. In 2013, a female employee complained to human resources about plaintiff treating her in a hostile and aggressive manner, and plaintiff received a verbal warning from defendant. Also in 2013, plaintiff threatened defendant's interim chief financial officer, and received a written warning, informing plaintiff his behavior was insubordinate and abusive, and advising any further incidents would result in plaintiff's immediate termination.

According to plaintiff, defendant's executives made numerous age-related comments directed to him. Plaintiff alleged one executive stated interns brought "young blood" to the business, reinvigorated the company, had a better idea of what is "cool," "really [knew] social media," and relate to defendant's audience better than someone plaintiff's age. The same executive purportedly told plaintiff the company needed to hire young people in the marketing department because "old guys like us" did not know social media. Another executive allegedly expressed older workers were lazy, stayed home, and did not work to generate new clients. Plaintiff claimed the company's president stated: young people are the future of the company; younger employees were the smartest

3

people in the company; and the company wanted to hire younger people without any experience because they were eager to make sales. Still another executive was portrayed by plaintiff as exclaiming older sales people were not vigorously pursuing sales because older people did not care about business prospecting and were happy collecting paychecks until they retired.

Plaintiff was unable to remember the specific dates these comments were made. He also could not remember if there were any witnesses present when the comments were made, or if the comments were exact quotes.

At no time did plaintiff complain, either formally or informally, to anyone at the company that he was the victim of discrimination based on his age. Plaintiff continued working for defendant despite these comments.

Based on the money defendant paid Design Squared for marketing services, as compared to the sum defendant paid for plaintiff's salary and benefits, defendant concluded Design Squared could fulfill the company's marketing needs at a significantly lower cost, thereby improving the company's financial situation.[1] Plaintiff was told his position was being eliminated to

---

[1] In 2016, defendant saved $22,450 by eliminating plaintiff's job and retaining Design Squared to perform work that had been done by plaintiff. This figure did not include the savings defendant realized by not having to pay plaintiff's benefits.

A-1016-17T1

reduce defendant's expenses. Plaintiff was sixty-one years old when he was terminated. Defendant did not hire anyone to replace plaintiff. Defendant's marketing function continued to be performed by Design Squared. Plaintiff's other job responsibilities were absorbed by existing employees without any additional salary increase for those employees.

After plaintiff's filed his discrimination complaint, the parties exchanged discovery and scheduled depositions. The depositions, scheduled for the summer of 2016, were adjourned based on the parties' participation in mediation. The mediation, which occur in December 2016, was not successful.

In late December 2016, plaintiff requested new dates for the deposition of defendant's witnesses. Defendant claimed its counsel asked plaintiff's attorney to telephone him regarding discovery, but counsel did not respond. Plaintiff contended defendant did not respond until mid-January 2017, and then demanded plaintiff's deposition be scheduled within thirty days.

On January 28, 2017, the parties received a discovery end date notice, advising discovery would expire on April 9, 2017. Between February and early March 2017, defendant deposed plaintiff, plaintiff's wife, and plaintiff's treating physician.

A-1016-17T1

On April 6, 2017, a few days before the original discovery end date, plaintiff, with defendant's consent, obtained an automatic sixty-day extension of the discovery period. The new discovery end date was June 8, 2017. On April 28, 2017, plaintiff attempted to schedule depositions of defendant's witnesses. Defendant's counsel had scheduling conflicts on the proposed deposition dates, and asked plaintiff's counsel to provide alternative dates. Plaintiff's counsel did not respond.

On May 23, 2017, plaintiff submitted a letter requesting another sixty-day extension of discovery. Defendant consented to plaintiff's request. However, the court instructed plaintiff to file a formal motion for a discovery extension. On May 26, 2017, plaintiff filed a motion to extend discovery through August 7, 2017.

Anticipating the discovery motion would be granted, plaintiff asked defense counsel for dates to depose defendant's witnesses. Defendant provided four dates in June and July. However, plaintiff's counsel was unavailable on the designated dates.

While plaintiff's motion to extend discovery was pending, on June 19, 2017, the parties received a notice scheduling the matter for trial on September 5, 2017. Based on the trial notice, plaintiff scheduled the deposition of two

A-1016-17T1

defense witnesses for August 8 and 9, 2017. Defendant refused to produce the witnesses on those dates because they were beyond the presumed date of the discovery extension.

On June 23, 2017, the judge assigned to the discovery motion denied the extension based on plaintiff's failure to provide a proposed form of order in accordance with Rule 4:24-1(c). One week later, again with defendant's consent, plaintiff filed another motion to extend the discovery. The renewed motion included a proposed form of order, stating all depositions would be completed by August 15, 2017.

The same discovery motion judge, in an order dated July 27, 2017, denied plaintiff's renewed discovery extension motion based on plaintiff's failure to present "exceptional circumstances" because the matter had a scheduled trial date. The order stated: "Parties may always engage in consensual discovery." However, defendant declined to produce its witnesses for depositions after the expiration of the discovery end date.

Plaintiff filed a motion for reconsideration of the July 27, 2017 order.[2] The judge denied the reconsideration motion. On the denial order, the judge

[2] Plaintiff's notice of appeal and case information statement do not include the July 27, 2017 order. However, the order denying plaintiff's motion for reconsideration is addressed to the July 27, 2017 order.

wrote: "The parties had the opportunity to take discovery that was necessary [and] if their adversaries were not cooperating, they had the opportunity to engage in motion practice to compel or dismiss. The parties failed to do either [and] exceptional circumstances have not been demonstrated."

Prior to the disposition of plaintiff's reconsideration motion, defendant filed a motion for summary judgment. The summary judgment motion was argued before a different judge. On September 18, 2017, the judge granted defendant's motion. The judge found plaintiff was unable to prove a prima facie case of discrimination because defendant did not hire a younger person to perform plaintiff's job duties. The judge determined:

> defendant has presented uncontroverted evidence that [p]laintiff's core responsibilities as Vice President of Marketing were outsourced to Design Squared, a third party agency originally retained by [p]laintiff. In so doing, the fees [d]efendant paid to Design Squared were less than the salary and benefits it paid to [p]laintiff. The menial task of inputting data into salesforce.com was assumed by a marketing assistant. Finally, what little responsibility [p]laintiff had for sustainability was assumed by the compliance manager[.][3]

---

[3]   Although the compliance manager was younger than plaintiff, she did not replace him. In addition, plaintiff conceded his sustainability duties were only fifteen percent of his overall job responsibilities, and the compliance manager absorbed those responsibilities as part of her own job duties for defendant.

Even though the judge concluded plaintiff failed to demonstrate a prima facie case of age discrimination, the judge reviewed plaintiff's claims under the McDonnell Douglas[4] burden shifting framework. Assuming plaintiff had met his burden on his age discrimination claim, the judge found defendant provided a legitimate, non-discriminatory reason for its decision to terminate plaintiff based on the significant cost-saving to the company resulting from the elimination of plaintiff's job. The judge determined defendant saved approximately $22,000 the year after eliminating plaintiff's job and outsourcing work to Design Squared. As for plaintiff's job responsibilities related to sustainability and salesforce.com, the judge concluded other employees, who were paid less than plaintiff, absorbed those duties without additional compensation, resulting in a further cost-savings to defendant.

Thus, the burden of production shifted and plaintiff was required to show the reasons proffered by defendant in support of termination were pre-textual. However, the judge rejected plaintiff's pretext evidence. However, the judge found plaintiff could not "even articulate" comments to support he was fired because of his age. Nor could plaintiff provide "precise quotes, context,

---

[4] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

approximate dates, other witnesses, or in some cases, to even identify the individual who allegedly made the comment." In addition, the judge determined plaintiff was unable "to present any facts demonstrating that [d]efendant engaged in a pattern of targeting older workers for termination." The judge found:

> Looking at the total record, the evidence shows [d]efendant treated [p]laintiff far more favorably than it was required to do. Defendant provided [p]laintiff with copies of its policies regarding discrimination and harassment. Defendant treated [p]laintiff fairly and generously throughout his tenure with the company. Defendant continued to employ [p]laintiff despite serious misconduct. Plaintiff never raised the issue of discrimination or hostile work environment at any time during his employment with [d]efendant.

In reviewing plaintiff's hostile work environment claim, the judge opined "[n]ot even the most generous reading of [p]laintiff's allegations supports the conclusion that a reasonable person could view the alleged comments as 'threatening or humiliating' statements likely to 'unreasonably interfere with an employee's work performance.'" The judge determined such a claim was directly contradicted by "the support and generosity the [d]efendant repeatedly showed [plaintiff]." In granting defendant's motion, the judge noted "there may be some factual disputes present in the record, [but the disputes do] not rise to

the level of being sufficient to defeat summary judgment.  This is so even assuming the veracity of plaintiff's alleged facts."

On appeal, plaintiff raises three arguments: (1) the court erred in refusing to extend discovery to permit plaintiff to depose key witnesses; (2) the court erred in denying reconsideration on the requested discovery extension; and (3) the court erred in granting summary judgment in favor of defendant, dismissing his age discrimination and hostile work environment claims.

We first examine plaintiff's arguments related to the judge's denial of the motions to extend discovery.  We "apply an abuse of discretion standard to decisions made by . . . trial courts relating to matters of discovery."  Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citing Bender v. Adelson, 187 N.J. 411, 428 (2006)).  "As it relates to extensions of time for discovery, appellate courts, . . . have likewise generally applied a deferential standard in reviewing the decisions of trial courts."  Ibid.  Ordinarily, "we decline to interfere with discretionary rulings involving discovery unless it appear that an injustice has been done."  Cunningham v. Rummel, 223 N.J. Super. 15, 19 (App. Div. 1988).

Rule 4:24-1(c) allows for one sixty-day extension of discovery by consent of the parties.  The discovery extension rule requires:

11

> [t]he movant [ ] append to such motion copies of all previous orders granting or denying an extension of discovery or a certification stating that there are none . . . . Any proposed form of extension order shall describe the discovery to be completed, set forth proposed dates for completion, and state whether the adverse parties consent.
>
> [Rule 4:24-1(c).]

The discovery motion judge denied plaintiff's first motion to extend discovery because plaintiff failed to provide a proposed form of order setting forth the discovery to be completed, with a deadline for each requested discovery item, and failed to state the adverse party consented to the extension.

Plaintiff argues the judge erred in denying the first motion to extend discovery because he demonstrated "good cause" for the additional sixty-day extension of discovery. However, the judge's denial of plaintiff's first motion to extend discovery was based on plaintiff's failure to comply with Rule 4:24-1(c). Plaintiff admittedly failed to comply with the requirements of the Court Rule governing extensions of the discovery. See R. 4:24-1(c); see also Pressler & Verniero, N.J. Court Rules, cmt. 3 on R. 4:24-1(c) (2019) ("This paragraph mandates that any proposed form of order extending discovery must describe the discovery to be completed as well as indicate proposed dates for completion and whether adverse parties have consented.").

The judge denied plaintiff's second motion to extend discovery, finding plaintiff failed to demonstrate exceptional circumstances. Plaintiff's second motion to extend discovery was also governed by Rule 4:24-1(c), which provides that "[n]o extension of the discovery period may be permitted after arbitration or trial date is fixed, unless exceptional circumstances are shown."

To demonstrate exceptional circumstances, we generally require the attorney to show she or he has diligently pursued the information sought during the discovery period but had been frustrated from obtaining the discovery by circumstances largely beyond counsel's control. See Bender, 187 N.J. at 429. Specifically, the moving party must show: (1) why discovery was incomplete and the diligence in pursuing discovery; (2) the additional discovery is essential; (3) an explanation for why an extension was not sought within the original discovery period; and (4) the circumstances were beyond the party's and counsel's control. Garden Howe Urban Renewal Assocs., LLC v. HACBM Architects Engineer Planners, LLC, 439 N.J. Super. 446, 460 (App. Div. 2015) (internal quotation marks and citations omitted).

At the time plaintiff filed the second motion to extend discovery, a trial date had been set, elevating the requisite showing to obtain a discovery extension from establishing "good cause" to demonstrating "exceptional

13

circumstances." The judge denied plaintiff's second motion, finding, "Exceptional circumstances not demonstrated why after 510 days of discovery on this track III case discovery is incomplete. Parties may always engage in consensual discovery."

Plaintiff failed to demonstrate exceptional circumstances justifying plaintiff's second motion for a discovery extension. Plaintiff did not demonstrate diligence in pursuing discovery. Nor did plaintiff explain how the circumstances necessitating a discovery extension were beyond the counsel's control. Plaintiff could have filed a motion to compel the depositions of defendant's witnesses but did not do so. Thus, the judge's denial of plaintiff's second motion for failure to demonstrate exceptional circumstances was not an abuse of discretion.

Turning to plaintiff's argument that the judge erred in denying his motion for reconsideration, we review a trial court's determination on such a motion for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). Rule 4:49-2 provides that a party may file a motion for reconsideration seeking to alter or amend a judgment or order, as long as the motion "state[s] with specificity the basis on which it is made, including a statement of the

14

matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred."

"A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

> Reconsideration should be utilized only for those cases which fall within that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [ Ibid.]

The judge denied plaintiff's reconsideration motion, explaining "[t]he parties had the opportunity to take the discovery that was necessary [and] if [the] adversary[y] [was] not cooperating [plaintiff] had the opportunity to engage in motion practice to compel or dismiss. The [plaintiff] failed to do either and exceptional circumstances have not been demonstrated."

Plaintiff argues his motion for reconsideration presented new information regarding defendant's conduct after the court's denial of the first two discovery motions. Specifically, plaintiff contends defendant refused to produce witnesses

15

for depositions. Plaintiff claims these newly asserted facts constituted exceptional circumstances.

We are satisfied the judge's denial of plaintiff's reconsideration motion was appropriate under the circumstances. Plaintiff never raised defendant's refusal to produce witnesses for depositions as a basis for granting the second motion to extend discovery. Moreover, the information was not newly discovered. Plaintiff's counsel was aware of defense counsel's position regarding producing defendant's witnesses absent a court order extending discovery. Nothing precluded plaintiff's counsel from filing a motion to compel the depositions of defendant's witnesses or, alternatively, a motion to suppress defendant's answer for failure to provide discovery. Thus, the judge's denial of plaintiff's reconsideration motion was proper.

We next consider plaintiff's argument that the court erred in granting summary judgment, dismissing his age discrimination and hostile work environment claims. We review a grant of summary judgment de novo, applying the same standard as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

16

challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court considers the evidence "in the light most favorable to the non-moving party" and determines whether it would be "sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). In satisfying this burden, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must produce sufficient evidence to support a verdict in the non-moving party's favor. R. 4:46-5(a); Triffin v. Am. Int'l Grp., Inc., 372 N.J. Super. 517, 523 (App. Div. 2004).

In opposing summary judgment based on incomplete discovery, a plaintiff must "demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003) (quoting Auster v. Kinoian, 153 N.J. Super. 52, 56 (App. Div. 1977)). The non-moving party is required to present competent evidence, raising genuinely disputed issues of material fact. Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005).

Here, plaintiff failed to proffer facts sufficient to infer discriminatory intent on the part of defendant. The alleged comments made by defendant's

executives, even if true, do not refer to plaintiff's age to support his age discrimination claim. In opposing defendant's motion, plaintiff never identified any discovery deficiencies warranting denial of summary judgment. Therefore, even assuming for argument's sake that the trial court erred in denying a discovery extension – which we have concluded it did not – plaintiff failed to articulate additional discovery that would bolster his claims or supply the missing elements of his cause of action.

To prevail on a claim under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, New Jersey courts have adopted the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id. at 14. Under that analysis, the plaintiff must establish a prima facie case of discrimination. Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002). The court required plaintiff to show that he or she:

> 1) belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and that (4) the employer sought to, or did fill the position with a similarly-qualified person. The establishment of a prima facie case gives rise to a presumption of discrimination.
>
> [Ibid.]

18

The judge focused on the fourth prong for proving a prima facie case of discrimination. The judge explained "the fourth element requires a showing that the [p]laintiff was replaced with 'a candidate sufficiently younger to permit an inference of age discrimination,'" citing <u>Nini v. Mercer County Community College</u>, 406 N.J. Super. 547, 554 (App. Div. 2009).

Plaintiff claims he was not required to show he was replaced by a younger individual, and he need only demonstrate "circumstances giving rise to an inference of discrimination" consistent with <u>Williams v. Pemberton Township Public Schools</u>, 323 N.J. Super. 490 (App. Div. 1999). However, that case is inapposite as the plaintiff's job in <u>Williams</u> continued to exist after the plaintiff was terminated. <u>Id.</u> at 497, 502.

This case is more analogous to <u>Young v. Hobart West Group</u>, 385 N.J. Super. 448, 455-57 (2005). There, the plaintiff was terminated from her position as a cost reduction measure. <u>Ibid.</u> The job position was eliminated, no one was hired to replace the plaintiff, and the plaintiff's former duties were assumed by her supervisor and branch managers. <u>Id.</u> at 460.

In that case, we found the plaintiff could not show "either that she was replaced by someone sufficiently younger, or that 'age in any significant way made a difference' in the treatment she was accorded by her employer." <u>Ibid.</u>

19

We concluded the plaintiff could not establish a prima facie case of age discrimination under those circumstances. Ibid.

Reviewing the facts in this case in the light most favorable to plaintiff, he failed to meet his burden of demonstrating a prima facie case of age discrimination by showing he was replaced with a younger employee. It is undisputed that defendant eliminated plaintiff's position and did not hire, or seek to hire, a replacement. To the contrary, plaintiff's primary job function was outsourced to Design Squared at a substantial cost saving to defendant, and plaintiff's remaining duties were assumed by existing employees at the company.

For the sake of completeness, we also review the judge's determination that defendant articulated a legitimate, non-discriminatory reason for terminating plaintiff's employment and plaintiff failed to demonstrate defendant's reasons for terminating his job were pretextual. The unrefuted evidence demonstrates defendant hired Designed Squared to provide marketing services at a cost less than the amount defendant paid to plaintiff annually. Plaintiff conceded his job responsibilities related to sustainability and salesforce.com were assumed by other employees, who received no additional compensation after absorbing these duties. The evidence supported defendant's

20

desire to eliminate redundant services by using an outside company at significant cost-savings.

The judge evaluated the facts, assumed the veracity of plaintiff's assertions of discriminatory comments, and viewed the record in a light most favorable to plaintiff. On this record, the judge concluded plaintiff "failed to provide any evidence by which a reasonable jury can conclude that [d]efendant's reasons for eliminating his position were a pretext for age discrimination." We discern no error in the judge's decision, determining there was no genuine issue of material fact for the jury to resolve and finding plaintiff failed to present a prima facie case of age discrimination.

We next consider plaintiff's argument that the judge erred in dismissing his hostile work environment claim. To establish such a claim under LAD,

> plaintiffs must satisfy each part of a four-part test. Specifically, they must show that the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive.
>
> [Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 24 (2002), (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)).]

A court must review a hostile work environment claim in light of the totality of circumstances. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 178, 196 (App. Div. 2005). The inquiry is whether a reasonable person in plaintiff's position would consider the alleged discriminatory conduct "to be sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile or offensive working environment." Ibid. (quoting Heitzman v. Monmouth Cty., 321 N.J. Super. 133, 147 (App. Div. 1999)). The test is strictly objective; whether a reasonable person in the plaintiff's position would consider the work environment hostile. Godfrey v. Princeton Theological Seminary, 196 N.J. 178 (2008).

Here, the judge concluded, "[n]ot even the most generous reading of [p]laintiff's allegations supports the conclusion that a reasonable person could view the alleged comments as 'threatening or humiliating' statements likely to 'unreasonably interfere' with an employee's work performance." The judge determined, "[n]o reasonable fact finder evaluating the comments [p]laintiff has alleged could conclude the evidence demonstrates severe or pervasive conduct sufficient to alter [p]laintiff's working conditions and create a hostile or abusive environment, particularly in view of the support and generosity the [d]efendant repeatedly showed him."

22

Plaintiff claims the judge erred in determining the age-related comments made by defendant's executives were not severe or pervasive. Plaintiff contends the judge improperly weighed the credibility of plaintiff's evidence related to his hostile work environment claim. Even taking plaintiff's allegations as true, his claim fails to support an age-based hostile work environment claim under the LAD. A plain reading of the comments allegedly attributable to defendant's executives reveals the statements were not severe, physically threatening, or humiliating to "unreasonably interfere" with plaintiff's work performance. Nor did plaintiff complain the alleged comments by defendant's executives were affecting his work performance.

Having reviewed the record, we are satisfied the summary judgment motion judge undertook a complete review of the record and determined that plaintiff failed to raise a genuine issue of material fact. "[E]ven assuming the veracity of plaintiff's alleged facts," the judge concluded no rational factfinder could find in favor of plaintiff on his claims.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-1016-17T1