**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2730-17T4

CRAIG SHRADER,

     Plaintiff-Appellant,

v.

DATAMOTION, INC., and
ROBERT JANACEK,

     Defendant-Respondents.

_____

Submitted February 11, 2019 – Decided June 10, 2019

Before Judges Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2562-15.

Law Office of David H. Kaplan, LLC, attorneys for appellant (David H. Kaplan, of counsel; Jeffrey Zajac, on the brief).

Fisher & Phillips LLP, attorneys for respondent (David B. Lichtenberg, of counsel; David J. Treibman, on the brief).

PER CURIAM

Plaintiff Craig Shrader appeals from the trial court's order granting summary judgment in favor of defendants DataMotion Inc. ("DataMotion") and Robert Janacek (collectively "defendants") in an age discrimination claim brought pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 ("LAD"). In May 2015, plaintiff's position at DataMotion was eliminated as part of a reduction-in-force ("RIF"). However, plaintiff contends that the RIF was a pretext for discrimination and that he was actually fired due to age bias. The trial court granted summary judgment to DataMotion. On appeal, plaintiff argues there are several issues of material fact that would support a jury finding DataMotion's claim that the decision to fire him was a legitimate part of a RIF was, in fact, a pretext for discrimination on the basis of age. In light of the competent evidence in the record, and the prevailing legal principles, we affirm.

We derive the following facts from the record. DataMotion is a privately held corporation, which was founded by Mahesh Muchhala and defendant Janacek in 1999. DataMotion is in the business of moving sensitive data securely between trading partners using encryption software. Muchhala is the President of the company and during the relevant time, Janacek was Chief Technology Officer ("CTO"). From 2008 through 2013, Robert Bales was a

shareholder and a member of the company's Board of Directors. In or about late 2012 or early 2013, Bales also became CEO.

In December 2012, Muchhala, Bales, and Janacek decided to "staff ahead of cash flow," expanding the company by hiring more employees in order to enter the electronic medical records market. As a result, during 2013, DataMotion's workforce expanded from approximately twelve employees to about thirty-five.

Among those hired in the expansion was plaintiff, who on August 12, 2013, began his employment with DataMotion as Vice President of Technical Operations and Support, reporting to Janacek. Plaintiff, who was born February 23, 1953, was sixty years old when Janacek hired him.[1] Janacek decided to create plaintiff's position to facilitate the company's attempt to obtain more "enterprise customers" (i.e. large companies whose employees number in the thousands and that have formal structures).

Janacek interviewed and hired plaintiff because he had the skill set Janacek was looking for: significant enterprise, security, and compliance experience, and the capability of overseeing support and operations. Prior to

---

[1] Janacek was forty-eight years old when he hired plaintiff.

 A-2730-17T4

hiring plaintiff, Janacek had performed those functions, except for compliance, which had been handled by technical writer John Irwin.

Plaintiff oversaw DataMotion's support and operations department. Plaintiff's role was to support enterprise customers. He did not make the sales, but could be involved in supporting the sales team. Plaintiff's job was not technical, rather he had oversight of a team that included technical experts like Matthew Signorello.

Signorello, an employee in his thirties, began working for DataMotion in April 2013, several months before plaintiff did. He took the "natural lead" of both the operations and support aspects of plaintiff's department, having day-to-day responsibility for both operations oversight and customer support. Plaintiff noted that Signorello "gave his heart and soul for the company making customers [and] addressing customer problems" in a timely and effective fashion.

Signorello was "an architect engineer of the" software on which DataMotion's business was based. He oversaw the hardware and software installations for both DataMotion and its customers and worked with around seventy electronic health record companies, which constituted a "big part" of

DataMotion's growth. Signorello also functioned as a "presales system engineer," providing technical support to salespeople.

DataMotion operated at a deficit beginning in 2008. At that time, Muchhala, Bales, and Janacek decided they wanted to "grow the company" with the ultimate goal of selling it, and financed its growth with funds from outside investors. They expected the company to operate at a deficit for about three years, at which point revenues would exceed expenses; but by the end of 2012 that had not happened.

DataMotion's "staffing ahead" started in 2013 and continued throughout plaintiff's employment. As a result of the financial situation, within two months after plaintiff began working for DataMotion, the company imposed a salary reduction, with plaintiff's starting salary of $150,000 being reduced twenty percent. However, within a few weeks, plaintiff's full salary was restored, and he was fully reimbursed for the short-lived reduction.

In the middle of 2014, the company announced there would be a shortfall in revenue, and that the salaries of employees at the Vice Presidential level and above, including plaintiff and seven others, would be reduced. Plaintiff's salary was again cut twenty percent, and this reduction lasted about three or four

months. When salaries were restored, the company was unable to offer a reimbursement.

The company's financial troubles continued into 2015. The management team, Muchhala, Bales, and Janacek, were considering all options for reducing expenses. Early in the year they implemented a hiring freeze, then another round of twenty percent salary reductions, which affected "the entire executive team and the sales team," including, among others, Muchhala, Bales, and Janacek, as well as plaintiff. Bales and Janacek instructed plaintiff to "reduce expenses in any way possible." In short, DataMotion "did just about everything we could to reduce cost[s] short of letting people go," but "[w]e finally got to a point where it was clear we needed to trim staff," and ultimately decided that a "downsizing" was necessary.

Muchhala, Bales, and Janacek decided that DataMotion needed to reduce payroll by approximately $400,000 while still maintaining current operations. Janacek, who had hired plaintiff, made the decision to include plaintiff's position in the RIF upon being "asked by Mr. Bales to look at the department and see how we can still run effectively and save cost."

Plaintiff's position was chosen for the downsizing for several reasons: First, plaintiff's position had been created primarily to facilitate DataMotion's

6

attempt to obtain and service enterprise customers. However, the anticipated "enterprise sales didn't materialize." Plaintiff admitted that "we looked at a professional services capability that would generate revenues, and unfortunately the results of those efforts were not significant and did not come in a time that would make a difference for the reduction in force."

Second, before Janacek hired plaintiff, he had handled enterprise customers, security, and the oversight of support and operations, and Irwin had handled compliance. Thus, the two of them could reabsorb the functions of plaintiff's position.

Third, plaintiff, unlike the other three Vice Presidents, did not do any hands-on work. He "was the only one that was doing primarily management functions as opposed to doing management plus part of the job, so we felt like we could replace him with existing people."

Plaintiff acknowledges the reasoning in choosing his position for the downsizing, testifying: "I believe there were two things at play. One is that I was a highly paid senior person, and I believe they no longer needed my value-added experience and background, and they felt that they could operate their company with less qualified individuals."

A-2730-17T4

By mid-April 2015, Muchhala, Bales, and Janacek had decided that four employees would be terminated in the downsizing: plaintiff; two salespeople, Ali Kizar, aged forty-nine, and Tracy Huff, aged forty-seven; and a quality assurance employee, Gregory Zuvich, aged forty-five.

DataMotion's downsizing accomplished its objective of reducing payroll by $400,000 per year. Based on their year-to-date earnings as of May 31, 2015,[2] plaintiff's salary was $136,400.04 per year, Kizar's was $88,247.88 per year, Huff's was $81,733.80 per year, and Zuvich's was $90,000 per year, for a total of $396,381.72.

After plaintiff's termination, he was not replaced. Instead, his responsibilities were primarily reabsorbed by Janacek and Irwin, with the balance being distributed to other DataMotion employees in plaintiff's department, including systems engineers Jeremy Kessous and Tom O'Reilly, and operations and support employee Signorello.

On October 26, 2015, plaintiff filed his complaint against defendants. After defendants filed a motion for summary judgment, the trial court heard oral argument and granted the motion.

---

[2] The effective date of the terminations of all except Zuvich was May 31, 2015. Zuvich's last official day was May 29, 2015.

A-2730-17T4

The trial court's decision rested on the finding that plaintiff was unable to state a prima facie claim of age discrimination under the LAD. The trial court noted that nothing in the record supported plaintiff's contentions that the decision to eliminate his position had anything to do with age. The trial court further noted that plaintiff's opposition was based primarily on his own deposition testimony and his counsel's certifications. The trial court further found that even if plaintiff could establish a prima facie case, DataMotion provided numerous legitimate, non-discriminatory reasons for the elimination of plaintiff's position, which plaintiff failed to rebut.

On appeal, plaintiff argues that the trial court erred by granting DataMotion's motion for summary judgment because he established a prima facie case of age discrimination. Although we agree that plaintiff established a prima facie claim of age discrimination, on summary judgment, he was unable to rebut DataMotion's legitimate, non-discriminatory business reasons for eliminating his position. Accordingly, we affirm the trial court's grant of summary judgment to DataMotion.

We review a grant of summary judgment de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

> [W]hen deciding a motion for summary judgment under Rule 4:46–2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

"[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley, 228 N.J. at 346 (citing Templo Fuente, 224 N.J. at 199). We emphasize that "conclusory and self-serving assertions by one of the parties are insufficient to overcome [a summary judgment] motion[.]" Puder v. Buechel, 183 N.J. 428, 440-41 (2005) (citing Martin v. Rutgers Cas. Ins. Co., 346 N.J. Super. 320, 323 (App. Div. 2002)).

According to the LAD,

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or an employer, because of the . . . age . . . of any individual . . . to discharge . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]
>
> [N.J.S.A. 10:5-12(a).]

All workers over the age of eighteen are protected from age discrimination under the LAD. Bergen Com. Bank v. Sisler, 157 N.J. 188, 214-15 (1999).

Prima Facie Case of Age Discrimination.

"In a case alleging age discrimination under the LAD, an employee must 'show that the prohibited consideration[, age,] played a role in the decision making process and that it had a determinative influence on the outcome of that process.'" Id. at 207 (alteration in original) (quoting Maiorino v. Schering-Plough Corp., 302 N.J. Super. 323, 344 (App. Div. 1997)). New Jersey courts utilize the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) when a plaintiff attempts to "prove an employer's discriminatory intent through circumstantial evidence." Id. at 209. "[T]o successfully assert a prima facie claim of age discrimination under the LAD, plaintiff must show that: (1) she was a member of a protected group; (2) her job performance met the 'employer's legitimate expectations;' (3) she was terminated; and (4) the employer replaced, or sought to replace, her." Nini v. Mercer Cty. Comm. C., 406 N.J. Super. 547, 554 (App. Div. 2009), aff'd 202 N.J. 98 (2010) (quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005)).

In RIF cases, such as the instant one, the prima facie elements are modified. See Baker v. Nat'l State Bank, 312 N.J. Super. 268, 289 (App. Div.

1998). In <u>Baker</u>, the Appellate Division adopted the reasoning of <u>Marzano v. Comput. Sci. Corp., Inc.</u>, 91 F.3d 497 (3d Cir. 1996) for age discrimination claims under the LAD. <u>Ibid.</u>

> [In <u>Marzano</u>], the court noted that the Third Circuit Court of Appeals has relaxed the fourth prong of the prima facie case in the RIF situation, so that a plaintiff whose position was eliminated need not show that he or she was replaced, but must show that the employer retained someone outside the protected class. The court declined to impose the requirement of additional evidence because "[i]t would topple the complex evidentiary edifice constructed by the Supreme Court, and impose on plaintiff the very burden that <u>McDonnell Douglas</u> sought to avoid-that of uncovering a smoking gun," or producing direct evidence of discrimination.
>
> [<u>Id.</u> at 289-90 (citations omitted).]

Unlike the trial court, we find that plaintiff has stated a prima facie case of age discrimination. <u>See</u> <u>Nini</u>, 406 N.J. Super. at 554. It is undisputed that plaintiff was a member of the protected class as he was sixty-two when his position was eliminated. <u>See</u> <u>ibid.</u> It is also undisputed that plaintiff performed his job adequately and was discharged from his employment. <u>See</u> <u>ibid.</u> Further, plaintiff's job duties were split among the remaining employees in his former department, including Signorello, who was outside the protected class, and the Vice Presidents. <u>See</u> <u>Baker</u>, 312 N.J. Super. at 289-90. Accordingly, pursuant

12

to Marzano, plaintiff met his burden of establishing a prima facie case of age discrimination. See ibid.

However, this finding does not end our inquiry.

Legitimate Business Reason for Eliminating Plaintiff's Position.

"Once an employee establishes a prima facie case, the employer must 'articulate some legitimate, non-discriminatory reason for the employee's rejection.'" Erickson v. Marsh & McLennan Co., 117 N.J. 539, 550 (1990); Sisler, 157 N.J. at 210-11. "Where the employer produces such evidence, the presumption of discrimination disappears." Sisler, 157 N.J. at 211 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993)).

Here, DataMotion established several legitimate, non-discriminatory business reasons for eliminating plaintiff's position. See Erickson, 117 N.J. at 550. When DataMotion was unsuccessful in utilizing hiring freezes and salary reductions to increase profit, it decided to eliminate several positions that would not require hiring or training new employees.

Plaintiff's position was selected for several legitimate business reasons. First, he did not deal with day-to-day operations of the company, unlike the other Vice Presidents. Thus, plaintiff's job responsibilities were such that they could be absorbed by other Vice Presidents or employees. In that regard, most of his

13

job responsibilities were reabsorbed by Janacek and Irwin, who performed the job prior to plaintiff's hire. In addition, plaintiff was hired because DataMotion wanted to gain new enterprise clients, but the attempt to gain to new clients was unsuccessful.

The record reveals that plaintiff denied several of DataMotion's stated reasons for eliminating his position. However, plaintiff offers no evidence to support his denials, and plaintiff's own deposition testimony confirms DataMotion's motivations. Moreover, plaintiff acknowledged that there were legitimate business reasons for eliminating his position, including that DataMotion "no longer needed [his] value-added experience and background." As "conclusory and self-serving assertions by one of the parties are insufficient to overcome [a summary judgment] motion," plaintiff's bald denials are not enough to rebut DataMotion's legitimate business reasons for eliminating his position. See Puder, 183 N.J. at 440.

Furthermore, plaintiff's contentions that Signorello was retained instead of him because of plaintiff's age are without merit. Signorello was heavily involved in DataMotion's day-to-day operations and was a large part of DataMotion's growth. While plaintiff primarily possessed management skills, and did not have hands-on day-to-day responsibilities, Signorello was a

"natural" leader within plaintiff's department. Plaintiff also concedes that Signorello "gave his heart and soul for the company."

Thus, as plaintiff did not meet his burden in refuting defendants' stated non-discriminatory, legitimate business reasons for eliminating his position, we conclude that the trial court correctly granted summary judgment to defendants. See Sisler, 157 N.J. at 210-11.

To the extent any arguments are not addressed herein, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2730-17T4